John P. CASARINO, Plaintiff-Appellant,

v.

UNITED STATES of America, Secretary of Defense and Secretary of the Air Force, Defendants-Respondents.

No. 819, Docket 34506.

United States Court of Appeals, Second Circuit.

Argued May 26, 1970.

Decided Sept. 14, 1970.

Bradley B. Davis, Gates & Laber, New York City, for appellant.

Michael C. Silberberg, Patricia H. Hynes, Asst. U. S. Attys., Whitney North Seymour, Jr., U. S. Atty., for appellees.

Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

Appellant Casarino, a physician, is presently serving on active duty in Vietnam as a general medical officer (GMO) in the Air Force Medical Corps. On June 18, 1969, shortly before he was initially scheduled to report to active duty, Dr. Casarino commenced an action in the United States District Court for the Southern District of New York and moved for a preliminary injunction to

restrain defendants from ordering him to duty as a general medical officer. It was and is appellant's position that because he enlisted to become a reserve medical officer through recruitment in the Armed Forces Physicians' Appointment and Residency Consideration Program (commonly called the Berry Plan), he cannot lawfully be called to active duty as a general medical officer but may only be assigned to a billet involving his specialty, psychiatry. Plaintiff's motion for a preliminary injunction was denied for lack of subject matter jurisdiction, and, in the alternative, on the ground that it was unlikely that plaintiff would prevail on the merits of his action. We affirmed this order on July 23, 1969, and directed that the action be promptly heard on its merits in the district court. Thereafter Dr. Casarino reported for active duty. Plaintiff moved for summary judgment. Defendants moved to dismiss the complaint for lack of subject matter, jurisdiction or, alternatively, for summary judgment. On December 7, 1969 the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction was granted. Plaintiff appealed. We affirm the dismissal of the complaint.

In August 1967, Dr. Casarino applied for enrollment in the Berry Plan by completing a form which he had removed from a brochure entitled "Information Bulletin: Armed Forces Physicians' Appointment and Residency Consideration Program (Berry Plan—1965)." The Bulletin explained that physicians liable for military service may "volunteer for a Reserve commission in one of the Military Services and may be brought to duty at a mutually acceptable time," and from those volunteers enrolled in the program the "Army, Navy, and Air Force may obtain * * * the required number of general duty medical officers and specialists." The Bulletin further stated that "[t]o fill the Services' projected requirements for specialists, the Department of Defense will sponsor the deferment of a selected number of interns who will be permitted to complete residency training before being called to active duty." Dr. Casarino, pursuant to his request, was informed by letter dated August 20, 1965 that he had been selected for residency training deferment in pediatrics, provided he applied for and accepted a reserve commission in the Air Force. He complied and, on January 15, 1966, he was commissioned as a First Lieutenant in the Air Force. His residency in pediatrics, a two year training program, began in 1966. According to the Berry Plan Bulletin, "every effort" would be made to continue the deferment until completion of the required residency period. Thus Dr. Casarino believed he would not be called for active duty earlier than the summer of 1968.

In early 1967, Dr. Casarino decided to change his specialty to psychiatry, a three year training program. He notified the Air Force of his desire by a letter dated January 28, 1967. In this letter he requested an extension of his deferment "optimally" for four years, until the summer of 1972, so that he could complete eligibility requirements in the subspecialty of child psychiatry and "alternatively" an extension of but one year, until the summer of 1969, so that he could complete two years of training in general psychiatry. Although a three year residency period in general psychiatry is required before a doctor may receive certification by the appropriate American Specialty Board, the Air Force considers that doctors who have completed a two year residency period are qualified to serve as psychiatrists in the Air Force. By letter dated February 3, 1967, Dr. Casarino was advised that his alternative request for "an additional year of training with a completion date of July 1969" had been approved.

By letter dated September 3, 1968, appellant was notified that

Our records indicate that the United States Air Force will not meet the required staffing requirements in your specialty at the time you are scheduled to complete residency training. Therefore, you are being programmed for active duty in July-September 1969.

In late March 1969 appellant was notified to report on July 6, 1969 to the Medical Service School at Sheppard Air Force Base, Texas, for three weeks of basic orientation, and that his ultimate duty assignment was to be with the 3rd U. S. Air Force Dispensary, Bien Hoa Air Base, Vietnam, as a general medical officer. Upon receiving and verifying this news, Dr. Casarino wrote Lt. Colonel Kenneth W. Peters of the Medical Career Division, Office of the Assistant Surgeon General, in Texas, requesting to know why he was not assigned to a psychiatry specialty. He received the following reply:

> Since the Air Force will have an adequate number of fully trained psychiatrists to fill all requirements during the summer 1969, it will be necessary to assign you against an urgent requirement for a general medical officer.

Colonel Peters expressed regret and assured Dr. Casarino that "an effort" would be made to assign him to a billet within his specialized field of psychiatry during his second year of active duty. Subsequent efforts administratively to change his assignment to one in psychiatry failed.

While we are not without sympathy that Dr. Casarino did not secure an assignment in his chosen specialty field in medicine, the facts of this case do not rise to such a level that we can grant him the relief he seeks.

■■ Appellant initially claims that the district court had jurisdiction to review his assignment by the Air Force under the Tucker Act, 28 U.S.C. § 1346 (a) (2), because the Air Force was contractually obliged, pursuant to the terms of the Berry Plan, to assign him to his specialty. Section 1346(a) (2), however, does not permit suits in which the only relief sought is specific performance. United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889); Wells v. United States, 280 F.2d 275, 277 (9 Cir. 1960); Blanc v. United States, 244 F.2d 708 (2 Cir.), cert. denied, 355 U.S. 874, 78 S. Ct. 126, 2 L.Ed.2d 79 (1957); Clay v.

United States, 93 U.S.App.D.C. 119, 210 F.2d 686 (1953), cert. denied, 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080 (1954); R. E. D. M. Corporation v. Lo Secco, 291 F.Supp. 53, 58 (SDNY 1968), aff'd per curiam, 412 F.2d 303 (2 Cir. 1969); cf. Dugan v. Rank, 372 U.S. 609, 624, 83 S. Ct. 999, 10 L.Ed.2d 15 (1963).

■ Appellant next falls back on the district court's power "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, inasmuch as a court cannot, pursuant to its mandamus jurisdiction, "direct the *exercise* of judgment or discretion *in a particular way*," (emphasis added), Wilbur v. United States, 281 U. S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930), it has little control over the propriety of a decision that has been made. We have recognized, however, that

> * * * official conduct may have gone so far beyond any rational exercise of discretion as to call for mandamus even when the action is within the letter of the authority granted.

United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2 Cir. 1968) (Friendly, J.), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). We conclude that the Air Force official responsible for assigning appellant did not owe appellant a duty to place him in a billet in his specialty, nor did the official's judgment in so doing go "so far beyond any rational exercise of discretion as to call for mandamus."

At the outset, it should be noted that appellant is not complaining that the Air Force did not allow him to complete the three years of residency training which would qualify him for certification in general psychiatry by the American Board of Psychiatry, or the four years required to qualify him in his desired subspecialty in child psychiatry. In his letter notifying the Air Force of his impending change in specialty from pediatrics to psychiatry, Dr. Casarino intimated that although he preferred an extension of his deferment until the

summer of 1972, an extension to the summer of 1969 would be acceptable to him. In changing his specialty appellant realized he might even lose his initial deferment for, as stated in the Berry Plan Bulletin:

> If for any reason training is terminated prior to completion of a residency program, either by the physician or the hospital where he is in training, the participant will be brought to duty at the earliest practicable date * * *.
>
>    *    *    *    *    *    *
>
> Changes in specialty normally will not be permitted after selections are made. Selections are made on the basis of estimated requirements. These requirements are carefully calculated and must be filled.

In addition, a form appellant filled out at the time he indicated his specialty change conspicuously warned:

> Important: Change in specialty is not authorized once selected for residency training under the Berry Plan.

We need not consider whether Dr. Casarino would have foregone a specialty change to psychiatry had the Government indicated that such action would subject him to immediate callup, for, indeed, the Air Force permitted the switch in specialties and as a result allowed appellant three years deferment instead of the two years that had been originally contemplated.

It seems reasonable to suppose that if the Defense Department's long range estimates of the need for psychiatrists and for the need for general medical officers which it projected at the time Dr. Casarino's need as a psychiatrist was being considered in 1967 had proved to have been the needs of the Air Force in September 1968 when Dr. Casarino was programmed for active duty as a general medical officer this case would not have arisen. Appellant does not argue that he was the victim of arbitrary or discriminatory practices or that the decision to assign him as a general medical officer was unreasonable in light of the needs of the Air Force. Rather, it is appellant's position that, irrespective. of any changing circumstances brought about by an escalating war, the Government could reach but one decision in determining his assignment.

To the contrary, it is implicit by the terms of the 1965 Berry Plan which appellant claims establishes the Air Force's duty to place him in his specialty, that changing military manpower requirements might very well dictate the action taken here by Dr. Casarino's superiors. Just about every assignment made in the armed services is subject to the paramount "needs of the service," and that phrase is often involved to qualify well-intentioned "promises." The 1965 Berry Plan Bulletin contained such a qualification, for it instructed an applicant:

> If you are selected for deferment, *every effort* will be made to have your deferment continued until you complete the minimum training requirements of the American Specialty Board. *Continued deferment is contingent upon* your desires, your acceptability to the hospital, and *the needs of the Armed Forces.* (Emphasis added.)

This language allows the Government to terminate a deferment at any time. Because the terminatee in such an event would not have completed his residency training, his assignment when called to active duty would presumably be that of a general medical officer. Implicit, we think, in this arrangement is also the possibility that if "the needs of the Armed Forces" should require additional GMO's not already programmed, and specialists were not needed in a particular field, a doctor could be called to serve as a GMO even in the event his specialty training had been completed.[1]

---

1. This possibility was made explicit in an amended version of the Berry Plan promulgated in 1968:

> The Services endeavor to assign physicians to duties commensurate with their level of training; however, if a vacancy

This interpretation is fortified by resort to the portions of the Berry Plan Bulletin. The Plan provides for the selection of two groups of doctors seeking deferment for residency training. Group I selectees are called to active duty upon completion of their residency to serve two years in their specialties. Group II selectees, of which appellant was one, may or may not be called to active duty upon completion of their residency training, "contingent upon the needs of the Services." Those chosen not to be called upon completion of their training, according to the Plan, "will comprise a Ready Reserve pool of physicians who will be available for active duty in the event of a national emergency." Due to the pressing manpower needs brought about by the Vietnam war, however, a Ready Reserve pool was never established. Appellant argues that if the Air Force does not need his services as a psychiatrist he should be placed in a Reserve Pool until such time as an opening for a psychiatrist occurs. As we read the Berry Plan Bulletin it would not be an erroneous interpretation to conclude that if the Air Force should place a specialist in a Reserve Pool it could, if manpower needs for general medical officers dictated, call that specialist for active duty as a general medical officer. It is simply a technicality that appellant was called up directly instead of being first put into such a pool and then called up.

Although we deny Dr. Casarino any relief, we point out that the Air Force "promised" him that it would endeavor to assign him to his specialty during his final year of service.

We affirm the dismissal of the complaint on the ground that plaintiff's motion for summary judgment was properly denied and that defendants' motion for summary judgment should have been granted.

---

does not exist at the appropriate level of training, it will be necessary to assign a physician as a general duty medical officer.