**Robert E. GERBER, Plaintiff,**

v.

**Dr. Robert C. SEAMANS, Jr., Secretary of the United States Air Force, and Commanding General, United States Air Force Reserve, Hq. Air Reserve Personnel Center, Denver, Colorado, Defendants.**

**No. 71 Civ. 3501.**

United States District Court,

S. D. New York.

Aug. 17, 1971.

---

Kunstler, Kunstler & Hyman, New York City, for plaintiff.

Whitney North Seymour, Jr., U. S. Atty., by Frank H. Wohl, Asst. U. S. Atty., Foley Square, N. Y., for defendants.

## MEMORANDUM OPINION

PIERCE, District Judge.

Plaintiff, First Lieutenant Robert E. Gerber, an Air Force officer attached to a reserve component, moves for a temporary restraining order staying the Air Force from requiring him to comply with orders to report to Wright-Patterson Air Force Base in Ohio to commence his term of active duty. This motion was brought on originally in the form of an order to show cause why a preliminary injunction should not issue. It was signed by Judge Tenney on August 6, 1971. On that date Judge Tenney denied plaintiff's request for a temporary restraining order. Subsequently, on August 10, 1971, the return date of the show cause order, the government requested a two-week delay to prepare for a hearing on the application for injunctive relief. Whereupon, plaintiff moved again for a temporary restraining order in view of his imminent change of status scheduled for August 16, 1971.

I

The facts as they appear from the affidavits and exhibits are as follows. Plaintiff entered the Air Force Reserve Officer Training Corps program (here-

inafter referred to as "AFROTC") in 1965 while an undergraduate student majoring in industrial engineering. (See Government Exhibits 6, 10–14.) At that time plaintiff applied for and received financial aid under the AFROTC financial assistance program. He agreed to complete an overall commitment of eight years, four of which were to be served on active duty. (See Government Exhibits 13, 14.) Upon his graduation in June, 1967, he was duly commissioned as a Second Lieutenant in the Air Force Reserve. (Government Exhibits 4, 5). Prior to his graduation, he submitted a request for delay from entry to active duty, utilizing standard form ARRC 44, wherein he stated that he desired to obtain a law degree. (Government Exhibit 9.) The Air Force granted this request five days later and specified conditions precedent to continuance of the delay. (Government Exhibits 7, 8; see also Plaintiff's Exhibits B, C.)

As far as can be determined from the papers and exhibits submitted, at the time plaintiff entered law school, AFROTC officers who earned law degrees received active duty assignments in the Judge Advocate General Department (hereinafter referred to as "JAG") upon admission to the Bar. (See Plaintiff's Exhibit E; see also Plaintiff's Exhibit C.) At some date thereafter, and prior to plaintiff's graduation from law school, however, the number of law graduates seeking appointment in the JAG began to exceed the number of available JAG positions. (See Plaintiff's Exhibit E; Government Exhibit 3, p. 2.) Subsequent to this development, the Air Force established a procedure for selection of the authorized number of officers from among the group of candidates who had otherwise satisfied its requirements for entry into JAG. First Lieutenant Gerber was notified of this procedure and did in fact participate in it. (Plaintiff's Exhibit E; Government Exhibit 3, pp. 2–3.) The Air Force communicated to plaintiff in mid-May 1971 that he had not been chosen for a JAG assignment, and requested that he specify his desired specialty. (Government Exhibit 2.) He did so reluctantly, indicating interest in another specialty (See Government's Exhibit 1) and on July 14, 1971 he received his orders to report to Wright Patterson Air Force Base to begin service in a non-legal capacity. (Plaintiff's Exhibit A.)

Plaintiff seeks to stay the Air Force from requiring him to comply with these orders. He alleges in extensive affidavits that he joined the Air Force with the expressed desire to serve as a JAG officer and upon the representation of the recruiter that he would be permitted to do so. (See Plaintiff's affidavit of August 5, 1971; Plaintiff's affidavit of August 12, 1971; see also Plaintiff's Exhibit D.) He claims that his assignment to non-JAG status constitutes a material breach of agreement which entitled him to mandamus either requiring his placement in JAG, or in the alternative, compelling his discharge from the Air Force. The government denies that a binding promise of a JAG position was ever made to plaintiff.

## II

The jurisdiction of this Court is founded on 28 U.S.C. Sec. 1361 (1964) which empowers the District Court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." In addition, it has been recognized in this Circuit that "official conduct may have gone so far beyond any rational exercise of discretion as to call for mandamus even when the action is within the letter of the authority granted." Casarino v. United States, 431 F.2d 775, 777 (2d Cir. 1970), citing United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 374 (2d Cir. 1968), cert. denied, 394 U.S. 929, 89 S.Ct. 1195, 22 L.Ed.2d 460 (1969). Thus, in the context of this case plaintiff might be able to obtain relief if he can establish (a) the existence of the unqualified representations upon which he allegedly relied at the time of his enrollment in AFROTC, and (b) the authority of the representing party, under Air Force pro-

cedure, to bind the service.[1] See 32 C.F. R. §§ 881.17–.19 (1971).

### III

The prayer for a temporary restraining order is addressed to the equitable judgment of the Court. Resolution of the question is founded on considerations of irreparable injury to the movant and the probability of his ultimate success. See Unicon Management Corp. v. Koppers Company, 366 F.2d 199, 204 (2d Cir. 1966). Here plaintiff's allegations with reference to the promise of a JAG appointment at the time of his enrollment in AFROTC are supported solely by his sworn statements; no other proof of such an inducement can be found among the score of documentary exhibits before this Court. In fact, in a letter dated March 11, 1971, seeking relief through other channels, plaintiff states that "upon my request, they gave me an 'educational delay' for the purpose of attending law school, and stated (verbally) that almost certainly I would be assigned as a JAG officer when I did go on active duty." (Government Exhibit 3.) (Emphasis added.) Plaintiff by his own admission thus indicates that a qualified representation was made to him at the *time of request of the delay*, and there is no showing, other than his sworn statements, that any representation at all was made at the date of his enrollment. On the basis of the documents before this Court, it appears unlikely, therefore, that plaintiff will prevail on the merits after a full hearing.

Moreover, plaintiff has not alleged that he will incur sufficient irreparable harm, in the few weeks intervening between this motion and the date of decision on the preliminary injunction, to overcome the negative impact on his case of the foregoing finding. Plaintiff's inconvenience in preparing this case for further litigation cannot be equated with irreparable harm. Likewise the fact that he will be serving for several weeks as a First Lieutenant rather than as a Captain is not wholly irreparable since he can collect the pay differential should he eventually prevail. Finally, while the Court recognizes that plaintiff's loss of privilege, status, and psychological satisfaction is irreparable in that it cannot be undone, such harm suffered for a short period of time cannot be considered of sufficient magnitude to support the extraordinary relief requested.

On the other hand, if the government is stayed from requiring plaintiff to report for duty in Ohio, his space in the entering class may remain unfilled thereby raising the cost per person of training that class, and in addition, creating at least a temporary gap in that particular service specialty at some time in the future. See United States ex rel. Schonbrun v. Commanding Officer, 403 F.2d 371, 375 (2d Cir. 1968).

In sum, plaintiff has not made a sufficient showing to this Court that he is entitled to a temporary restraining order. The Court is not, however, unmindful of plaintiff's plight in being stationed in Ohio while litigating his case in New York City. Thus the instant order is qualified below.

Plaintiff's prayer for a temporary restraining order is denied upon condition that he be permitted to apply for reasonable leave, upon reasonable application, for the purpose of traveling to this District to assist his attorneys in preparation for a hearing upon his request for a preliminary injunction.

The hearing on the request for a preliminary injunction is ordered for the earliest date agreeable to counsel, papers to be exchanged appropriately.

So ordered.

1. In Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the Supreme Court said: "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority." Id. at 384, 68 S.Ct. at 3.