SCHIAVONE CONSTRUCTION CO., a New Jersey Corporation, and SIC, a Joint Venture, Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHORITY; Elizabeth Dole, as Secretary of United States Department of Transportation; Jim M. Marquez, as General Counsel to the United States Department of Transportation; Mario Merola, as District Attorney for County of Bronx, New York; and Stephen R. Bookin, as Assistant District Attorney for County of Bronx, New York, Defendants.

No. 84 CIV 6462 (LBS).

United States District Court, S.D. New York.

Sept. 25, 1984.

Connell, Foley & Geiser, Newark, N.J., and Carter, Ledyard & Milburn, New York City, for plaintiffs; Theodore W. Geise, Newark, N.J., and Jack Kaplan, John A. Maher, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants Elizabeth Dole and Jim J. Marquez; Mary Ellen Kris, Asst. U.S. Atty., New York City, of counsel.

Stephen Kartagener, Asst. Dist. Atty., Bronx County, New York City, for defendants Stephen Bookin and Mario Merola.

## OPINION

SAND, District Judge.

Plaintiffs have submitted an application for a temporary restraining order and an

order to show cause for a preliminary injunction enjoining defendants Mario Merola, Bronx County District Attorney, and Stephen Bookin, Assistant District Attorney, from submitting to a New York State grand jury, for its consideration of possible indictment, matters relating to an allegedly false statement made by plaintiffs in documents filed with defendant New York City Transit Authority (hereinafter "the TA") pursuant to federal regulations governing plaintiffs' participation in a minority business enterprise (hereinafter "MBE") program.[1] Oral argument was held on September 10, 1984, at which time all defendants, other than the TA, appeared in opposition to plaintiffs' application. For the reasons stated herein, plaintiffs' application for a temporary restraining order is denied.

## FACTS

Plaintiff Schiavone Construction Co. (hereinafter "SCC"), a New Jersey corporation, is engaged primarily in the public works construction business in New Jersey and New York.[2] Plaintiff SIC is a joint venture formed in 1975 for the purpose of submitting a bid to the TA for construction of part of a New York City subway line. Plaintiffs were selected by the City to perform work on this project. The cost of the construction contract was incurred by the TA, but was funded primarily by federal grants made pursuant to the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1601 *et seq.* (1982). Pursuant to this statute, the Department of Transporta-

tion[3] has issued regulations requiring that each grant recipient (here, the TA) establish a program to insure the participation of MBE's in federally funded projects. Under these requirements, the TA was required to file quarterly reports indicating the extent of MBE participation in its federally funded subway construction project. In turn, the TA required SIC to report to the TA, on a quarterly basis, the value of work which SIC subcontracted to MBE firms.

On or about January 11, 1979 and February 8, 1979, SIC entered into a subcontract with Jopel Construction & Trucking Co., a corporation which qualified as an MBE within the meaning of the applicable federal requirements. In completing its quarterly report to the TA, SIC included, as part of the value of subcontract work performed by Jopel, the fair rental value of equipment owned by SIC and made available to, and operated by, Jopel in the performance of its subcontract responsibilities. Plaintiffs maintain that the inclusion of this amount as part of the value of work subcontracted to Jopel was in full compliance with applicable federal statutory and regulatory standards and guidelines governing the operation of federally funded MBE programs.

■■■ Defendants Merola and Bookin apparently concluded otherwise. On August 29, 1984, plaintiffs learned that these defendants had been and are presently engaged in presenting evidence regarding the above matter to a New York State grand jury in Bronx County.[4] Among the

---

**1.** Jurisdiction over this action is predicated on 42 U.S.C. § 1983 (1982) and 28 U.S.C. § 1331 and 1343(3) (1982). Section 1983 falls within the "expressly authorized" exception to the federal anti-injunction statute, 28 U.S.C. § 2283 (1982). *See Mitchum v. Foster,* 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

**2.** The following statement of facts is derived from plaintiffs' verified complaint, filed as part of their application for a temporary restraining order.

**3.** Elizabeth Dole, Secretary of the United States Department of Transportation (hereinafter "DOT"), and Jim Marquez, General Counsel to the DOT, have been named as defendants in this action. For purposes of the instant application,

however, no relief is sought by plaintiffs against these defendants.

**4.** Plaintiffs' alleged noncompliance with federal regulatory standards governing MBE firm participation has apparently been explored in connection with two prior investigations conducted by federal Special Prosecutor Leon Silverman. The Special Prosecutor was appointed to investigate various allegations concerning SCC and Secretary of Labor Raymond Donovan, former Vice-President of SCC. Both investigations culminated with the issuance of reports concluding that no basis for federal criminal prosecution had been found. *See* Complaint ¶¶ 27, 30.

Plaintiffs allege that three factors—the Bronx County District Attorney's office's pursuit of the

charges allegedly being considered are allegations that plaintiffs' inclusion of the aforementioned equipment rental charges as part of the value of work subcontracted to Jopel constituted knowing false statements, and that the filing of their quarterly reports with the TA was a violation of New York Penal Law § 175.35.[5] According to plaintiffs, the state grand jury proceeding is virtually complete and thus an indictment, if forthcoming, is imminent. It should be noted, however, that defendant Bookin represented at oral argument that the Bronx District Attorney's office has

present grand jury investigation in spite of the conclusions reached in these two prior federal investigations; various statements made concerning Secretary Donovan by a Bronx Assistant District Attorney at a prior criminal murder trial; and the alleged political motivation for the present investigation—demonstrate the defendants' bad faith prosecution and harassment of plaintiffs. Plaintiffs argue that this evidence justifies the granting of injunctive relief against defendants' continued investigation of this matter. This allegation of bad faith is apparently made for two reasons: (1) to avoid a potential bar to federal court intervention in this action, see *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and (2) as evidence of irreparable harm which plaintiffs will suffer if injunctive relief is not forthcoming. See Plaintiffs' Memorandum of Law in Support of Application for Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction, at 24 (hereinafter "Plaintiffs' Memorandum of Law").

It should be noted that no indictment has yet been returned against plaintiffs in state court. Accordingly, we do not understand defendants to argue that the precise holding of *Younger v. Harris* (federal court should not enjoin a pending state criminal prosecution) should operate as a bar to federal judicial intervention in this case. See *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (federal injunctive relief not precluded by *Younger* doctrine where no state criminal prosecution is pending); *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965); C. Wright, Law of Federal Courts § 52A, at 323–26 (4th ed. 1983) ("[I]f the state action, though threatened, is not yet pending, the federal court can consider the request for the declaration without regard to the *Younger* restrictions and can also give at least preliminary injunctive relief if the usual equitable tests for that kind of relief are satisfied."). Cf. *Rowe v. Griffin*, 676 F.2d 524, 525–26 (11th Cir.1982) (applying bad faith exception to pending state criminal prosecution of plaintiff); *Fitzgerald v. Peek*, 636 F.2d 943, 944 (5th Cir.) (same), cert. denied, 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981). (Defendants' arguments regarding the relevancy of general *Younger* abstention principles are discussed at page 1261 *infra*). As for (2), we conclude that plaintiffs have failed to demonstrate the degree of irreparable harm which is necessary in order to obtain federal equitable relief. See pages 1261–62 *infra*.

In any event, plaintiffs' allegations do not persuade this Court that defendants' investigation of the instant matter has been conducted in bad faith or with the purpose of harassing plaintiffs. Prior federal investigations of a particular transaction do not preclude the state from conducting its own investigation into the alleged existence of criminal conduct arising out of the same transaction. Indeed, defendants Merola and Bookin represented at oral argument that their investigation into the matters discussed herein arose out of a request made by federal law enforcement authorities. In this connection, we reject plaintiffs' argument that the state has no interest in investigating the alleged wrongdoing at issue in this case. Moreover, plaintiffs' conclusory statements regarding the alleged political motivation underlying the state's investigation fall short of the concrete evidence of retaliation or personal interest deemed sufficient to support a finding of bad faith. Cf. *Fitzgerald v. Peek*, 636 F.2d 943, 944 (5th Cir.) (bad faith found where criminal prosecution instituted in direct retaliation for plaintiff's exercise of First Amendment rights), cert. denied, 452 U.S. 916, 101 S.Ct. 305, 69 L.Ed.2d 420 (1981); *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir.1979) (bad faith, retaliatory prosecution found where state reinstated previously dormant criminal charges against plaintiff after plaintiff instituted civil action against state deputy); *Shaw v. Garrison*, 467 F.2d 113 (5th Cir.) (perjury prosecution instituted in bad faith where plaintiff was previously acquitted after testifying in his own defense in prior criminal proceeding and prosecutor had personal financial interest in continued publicity of charges against plaintiff), cert. denied, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972).

5. Section 175.35 provides:

Offering a false instrument for filing in the first degree.

A person is guilty of offering a false instrument for filing in the first degree when, knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision thereof, he offers or presents it to a public office or public servant with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

N.Y. Penal Law § 175.35 (McKinney 1975).

invited plaintiffs to appear before the grand jury and is still awaiting a response to this invitation.

Plaintiffs allege that the investigation of, and potential state indictment for, the charges described above constitute both a violation of their constitutional rights [6] as well as an improper usurpation of the "primary" jurisdiction of the DOT over these charges. Plaintiffs allege that it is the sole or primary responsibility of the DOT to investigate allegations that MBE program participants have made false statements or provided incorrect information to grant recipients, and that the state's responsibility is merely to furnish the DOT with evidence of such occurrences.[7] According to plaintiffs, a state prosecution of plaintiffs for making knowing false statements in their MBE program reports will necessarily entail the interpretation and application of federal regulatory standards and guidelines, tasks which should allegedly be performed in the first instance by the DOT. Plaintiffs allege that the return of an in-

dictment against them will probably result in their immediate suspension from future bidding on public contracts in New York and New Jersey, in accordance with state law, and thus will result in substantial economic harm. Plaintiffs claim that this harm constitutes an irreparable injury which, along with the alleged likelihood of plaintiffs' prospects of success on the merits of the instant action,[8] entitle them to a temporary restraining order or preliminary injunctive relief.[9]

## DISCUSSION

 A preliminary injunction or other temporary injunctive relief may be granted only where the plaintiff establishes (1) irreparable harm (if the requested relief is denied), and (2) either (a) the likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in plaintiff's favor. *See, e.g., Mattel, Inc. v. Azrak-Hamway International, Inc.*, 724

---

**6.** Plaintiffs allege violations of the right to free expression, privacy, due process, and equal protection. Complaint ¶ 41.

**7.** In this regard, plaintiffs rely on 49 C.F.R. § 23.87 (1983), which provides:

If, at any time, the Department or a recipient has reason to believe that any person or firm has willfully and knowingly provided incorrect information or made false statements, it shall refer the matter to the General Counsel of the Department. He/she may initiate debarment procedures in accordance with 41 CFR 1–1.604 and 12–1.602 and/or refer the matter to the Department of Justice under 18 U.S.C. 1001, as he/she deems appropriate.

**8.** Plaintiffs seek (1) a permanent injunction preventing defendants Merola and Bookin from pursuing their investigation of the aforementioned matter in state grand jury proceedings (or, if an indictment is returned, an injunction preventing prosecution of plaintiffs for the charges contained therein), and (2) a declaratory judgment that the matter be referred for determination by the DOT. *See* Complaint ¶¶ 47a, b.

**9.** Plaintiffs also argue that "extraordinary circumstances" exist which warrant federal equitable intervention in the state's criminal investigation. As with plaintiffs' "bad faith" allegation,

the "extraordinary circumstances" standard represents an exception to the *Younger* doctrine's bar against federal court intervention in pending state criminal prosecutions. *See Younger v. Harris,* 401 U.S. at 54, 91 S.Ct. at 755; C. Wright, Law of Federal Courts § 52A, at 324, 326 (4th ed. 1983). As noted previously, it is not this Court's understanding that the precise holding of *Younger,* as distinguished from the general federalism principles for which it also stands, bars consideration of plaintiffs' request for equitable relief in view of the fact that no criminal prosecution of plaintiffs is now pending in state court. *See* fn. 4 *supra.* In any event, the Supreme Court has apparently held on only one occasion that the "extraordinary circumstances" test to which plaintiffs advert was satisfied. *See Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973) (*Younger* not a bar to federal interference with proceedings of state optometry board where board members were so biased, due to personal interest in eliminating competition, that they were deemed incompetent to conduct hearings concerning revocation of plaintiff's optometry license). Based on our review of the allegations contained in the complaint, our discussion of the alleged existence of irreparable injury, and the lack of concrete evidence of bad faith on the part of defendants Merola and Bookin in investigating the plaintiffs' conduct, we conclude that extraordinary circumstances have not been adequately demonstrated.

F.2d 357, 359 (2d Cir.1983); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).[10] In addition, although the Supreme Court's decision in *Younger v. Harris*[11] does not appear to preclude this Court from granting the relief requested by plaintiffs, *see* fn. 4 *supra,* we are nevertheless mindful of the inherent federalism and comity concerns—the respect due from one sovereign to another—which are raised when a federal court is asked to enjoin an ongoing state criminal investigation. *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *Dombrowski v. Pfister,* 380 U.S. 479, 483–85, 85 S.Ct. 1116, 1119–20, 14 L.Ed.2d 22 (1965). We therefore must carefully scrutinize plaintiffs' allegations to determine whether the existence of irreparable injury has in fact been adequately demonstrated. We conclude that plaintiffs have failed to satisfy this first prong of the Second Circuit's two-part test for the granting of such relief.

The critical flaw in plaintiffs' application for temporary injunctive relief concerns both the speculative nature of the potential harm alleged, as well as the existence of adequate alternatives for redress which are substantially less intrusive than a federal court order prohibiting the state's continued investigation of plaintiffs' alleged criminal conduct. Even assuming that the requisite genuine or real threat of prosecution exists, *see Steffel v. Thompson,* 415 U.S. 452, 475, 94 S.Ct. 1209, 1224, 39 L.Ed.2d 505 (1974), this fact does not inevitably lead to the conclusion that federal judicial intervention is warranted. Plaintiffs do not allege that they will be precluded from engaging in construction work pursuant to already-existing contracts, even if they are in fact indicted.[12] They allege only that an indictment will probably result in their suspension from future bidding for public contracts.[13] *See* Complaint ¶¶ 42, 43. In other words, plaintiffs claim that if they are indicted, and if they seek to bid on future public contracts, and if the relevant state agencies then determine that they are no longer eligible to bid for public contracts, plaintiffs will then suffer the injury which they characterize as an irreparable injury resulting from the anticipated indictment. Thus, it is readily apparent that plaintiffs' alleged need to "discharge literally hundreds of SCC employees" upon indictment, *see* Complaint ¶ 43, certainly overstates the nature and extent of potential harm.

In addition, plaintiffs do not allege any particular harm, other than that which is normally incident to an indictment, which will arise as a direct and immediate consequence of the institution of criminal proceedings against them. Rather, the harm to plaintiffs would be more in the nature of a collateral or indirect injury which will arise only if (1) an indictment does in fact issue, and (2) the appropriate state authorities, in reliance upon the indictment, suspend plaintiffs from future bidding on public contracts. *Cf. Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d

**10.** In view of the notice and opportunity to be heard which were afforded to the parties in this action, we consider it appropriate to analyze plaintiffs' application for a temporary restraining order under the standards governing the granting of preliminary injunctive relief. *See Ragold, Inc. v. Ferrero, U.S.A., Inc.,* 506 F.Supp. 117, 123 (N.D.Ill.1980); *Simkins v. Gressette,* 495 F.Supp. 1075, 1079 (D.S.C.1980); 11 C. Wright & A. Miller, Federal Practice and Procedure § 2951, at 499–500 (1973). Indeed, the standards for determining whether to grant these two types of equitable relief are apparently the same. *See Pepsico, Inc. v. United States Securities and Exchange Commission,* 563 F.Supp. 828, 830–31 (S.D.N.Y.1983); *Gerber v. Seamans,* 332 F.Supp. 1187, 1190 (S.D.N.Y. 1971); Wright & Miller, *supra,* at 507–09.

**11.** 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

**12.** Plaintiffs' representations during oral argument confirmed that this was indeed not their contention.

**13.** It should be noted that although such action is allegedly authorized by New Jersey Department of Transportation regulations, it is unclear whether plaintiffs make this assertion with respect to New York law as well. *See* Plaintiffs' Memorandum of Law, at 17 (discussing New York case involving rescission of public contract); *cf.* Complaint ¶ 42.

648 (1975) (enforcement of criminal statute prohibiting topless dancing in bars would itself inflict severe economic hardship on plaintiffs).

Moreover, the harm that plaintiffs might suffer as a result of an indictment against them can be remedied in a manner far more direct and less intrusive than federal court intervention in the state's criminal investigation. Specifically, plaintiffs have failed to demonstrate why they could not simply seek an injunction in state court against the state officials or agencies which are responsible for enforcing the state statutes or regulations purportedly authorizing plaintiffs' suspension from future bidding.[14] This alternative would both allow the state's criminal investigation to proceed in the normal course, as well as protect plaintiffs from the economic hardship which would allegedly result if an indictment in fact issues. In addition, plaintiffs may move immediately for a dismissal of any indictment that is returned on the grounds asserted herein, namely, the existence of pre-emptive federal jurisdiction over the matters under investigation.[15] And even if plaintiffs are eventually suspended from bidding on public contracts before such motion is made or while it is pending, the temporary suspension which plaintiffs would endure pending the resolution of such a motion falls far short of the irreparable harm which plaintiffs must show in order to obtain the extraordinary relief requested. Finally, plaintiffs have failed to demonstrate why they could not adequately protect against the danger of defendants' alleged misinterpretation of federal regulations and guidelines concerning MBE work valuation methods by obtaining transcripts of the state grand jury proceedings, if an indictment is returned, so that plaintiffs can determine for themselves whether this perceived danger did in fact materialize. Any misinterpretation which occurs could then be used in support of either (1) a motion to dismiss any state indictment which is returned as a result of defendants' allegedly erroneous interpretation, or (2) plaintiffs' assertion that it is the DOT which should determine the applicability of its regulations and guidelines in order to determine whether plaintiffs' statements in their quarterly reports were in fact false or incorrect.

In sum, plaintiffs have failed to demonstrate immediate and irreparable harm sufficient to justify the intrusive federal equitable relief sought herein. Several alternatives exist by which plaintiffs can both protect their rights as well as obviate the need for federal judicial intervention in the state's ongoing criminal investigation. Therefore, regardless of whether plaintiffs are likely to succeed on the merits of this dispute,[16] they are not entitled to an order prohibiting the state defendants' continued investigation of plaintiffs' filing of an allegedly false statement with the TA. Plaintiffs' application for a temporary restraining order is therefore denied.[17]

SO ORDERED.

---

**14.** These officials have not been named as defendants in this action and thus are not before the Court.

**15.** New York courts are apparently amenable to such challenges. *See, e.g., People v. Shapiro,* 50 N.Y.2d 747, 431 N.Y.S.2d 422, 409 N.E.2d 897 (1980) (state wiretap law held pre-empted by federal Omnibus Crime Control and Safe Streets Act).

**16.** The Court expresses no opinion regarding the merits of plaintiffs' claim.

**17.** Based on the record presently before this Court, the conclusions reached herein would appear to apply with equal force to an application for preliminary injunctive relief. Subsequent to this Court's oral decision on September 11, plaintiffs advised this Court that they do not intend to pursue such relief at this time. Accordingly, plaintiffs' application for an order to show cause why a preliminary injunction should not be issued is hereby denied.