**Gil Q. ALVAREZ, Plaintiff,**

v.

**The CITY OF NEW YORK and the Police Department of the City of New York, Rudolph Giuliani, individually and in his capacity as Mayor of the City of New York, Howard Safir, Individually and in his capacity as Police Commissioner of the City of New York, Defendants.**

No. 98 Civ. 2488(DC).

United States District Court, S.D. New York.

April 21, 1998.

---

Bonita E. Zelman, New York City, for Plaintiff.

Michael Hess, Corporation Counsel for the City of New York by Ruby Bradley, Steven K. Weiss, New York City, for Defendants.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case, plaintiff Gil Q. Alvarez, a New York City police officer, contends that the Police Department of the City of New York (the "NYPD") and others retaliated against

him because he refused to participate in a cover-up of police brutality and had previously filed a lawsuit accusing the NYPD and others of discrimination. By order to show cause, Alvarez seeks a temporary restraining order and preliminary injunction preventing the Internal Affairs Division ("Internal Affairs") of the NYPD from conducting an investigation into his alleged misuse of confidential NYPD information during the prior lawsuit.

Alvarez's requests for a temporary restraining order and preliminary injunction are denied. First, Alvarez has failed to show that he would suffer irreparable harm if the NYPD were allowed to proceed with its Internal Affairs investigation. Second, Alvarez has not demonstrated that he is likely to succeed on his claim of retaliation, and indeed, he cannot be heard to complain because he invited the investigation to "clear" his name. Third, the claims are also likely to be substantially barred because they are based primarily on events that occurred *before* he settled the prior lawsuit and signed a general release. Finally, considerations of federalism and comity weigh heavily against the intervention by this Court in the pending inquiry. Under these circumstances, I hold that Alvarez has failed to demonstrate a basis for the extraordinary relief he now requests.

Pursuant to Fed.R.Civ.P. 65, my findings of fact and conclusions of law follow.

### FINDINGS OF FACT

In October of 1996, Alvarez filed a Title VII action in which he alleged that the NYPD discriminated and retaliated against him because he had refused to submit negative performance evaluations of minority officers who had complained about discriminatory treatment and had spoken out about the wide use of racial slurs by police officers. The complaint did not assert any alleged cover-up of police brutality.

During the course of discovery in the case, Assistant Corporation Counsel Jeffrey Weiss informed the Court by letter dated September 25, 1997 that the NYPD suspected Alvarez of improperly obtaining confidential NYPD records and using them to support his lawsuit. Weiss further advised that

> the NYPD has opted at this time not to open up an official Internal Affairs investigation regarding plaintiff's suspected breach of office. Nevertheless, First Deputy Commissioner Patrick E. Kelleher, who has been apprised of these recent developments, intends to transfer plaintiff from his current assignment at the Department Advocate's Office to an appropriate assignment where he no longer will be provided access to highly confidential NYPD information. The NYPD must insure the integrity of its confidential information systems. Moreover, should plaintiff in the future improperly access or use confidential NYPD information for his personal purposes in this litigation or elsewhere, the NYPD will open up an investigation and if appropriate, pursue disciplinary proceedings.

(Pl.Ex. D).

After a pretrial conference on September 26, 1997, Jonathan N. Fuchs, Esq., Alvarez's attorney in the prior action, and Weiss had a conversation about Alvarez's purported use of the confidential information and the NYPD's intent to transfer him. Weiss claims that, during this conversation, Fuchs said in substance:

> 'Don't transfer my client. We would bring an order to show cause. Bring on an investigation. We welcome an investigation ... as an opportunity to clear his name.'

(4/14/98 Tr. at 22). Fuchs, for his part, does not outright deny making those statements, but states—with much equivocation—that he does not remember making them:

> I don't believe I did.... I don't recall that that was part of my conversation.... I don't believe I would have done that, your Honor.

(*Id.* at 21). I find that Fuchs told Weiss that Alvarez invited an investigation into his conduct as a way of clearing his name.[1]

1. While I did not take testimony at the hearings on April 7 and 14, 1998, I have considered the affidavits submitted on behalf of plaintiff as well

A few days later, on October 1, 1997, Internal Affairs opened an investigation into Alvarez's alleged misuse of confidential NYPD information. (*See id.* at 7). Shortly thereafter, Alvarez was transferred to the Civilian Complaint Review Board ("CCRB") Team where, in his capacity as Assistant Department Advocate, he investigated and prosecuted cases involving allegations of police brutality and misconduct.[2] Alvarez never brought on an order to show cause to enjoin the transfer.

At some point in February of 1998, Fuchs had a conversation with Assistant Corporation Counsel Patricia Miller, who at various times participated in settlement discussions on behalf of defendants in the prior action. In his affidavit, Fuchs claims that "Miller advised [him] that there were no open internal affairs investigations at that time against plaintiff." (Fuchs Aff. ¶ 4). At the conference on April 14, 1998, however, Fuchs back-peddled from this statement; instead, he claimed that Miller merely said that "the only negative thing on [Alvarez's Central Personnel Index] was an unsubstantiated Health Services investigation." (4/14/98 Tr. at 17). Fuchs states that he *inferred* from that statement that there were no open Internal Affairs investigations involving Alvarez. (*Id.*). Miller, on the other hand, denies ever representing the status of any investigations of Alvarez during settlement discussions. (*Id.* at 18–20). Indeed, she denies making any promises as to the state of Alvarez's personnel record. I find that Miller never represented to Fuchs that there were no ongoing investigations concerning his client, and that she made no promises with respect to a clean personnel record for Alvarez as a condition of settlement.

Thereafter, the parties settled the first action. The City paid Alvarez $62,500. Although defendants *refused to agree to any* equitable relief, Alvarez accepted the settlement nonetheless. On February 25, 1988, as part of the settlement, Alvarez signed a document entitled "GENERAL RELEASE," which provided as follows:

> Know that I Gil Q. Alvarez ... do hereby release and discharge the defendants, their successors, or assigns, and all past and present officials, employees, representatives and agents of the New York City Police Department and the City of New York from any and all claims which were or could have been alleged by me in the aforementioned action arising out of the events alleged in the complaint in said action, including all claims for attorney's fees and costs.

The parties entered into a stipulation and order of settlement, which I "so ordered" on March 3, 1998. The stipulation and order expressly states that it

> contains all the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation and Order regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the parties hereto, or to vary the terms and conditions herein.

(Pl.Ex. F). The stipulation and order does not contain any explicit representations that the NYPD would not open any further investigations or refrain from completing any existing ones. It does not contain any representations as to the status of Alvarez's personnel file. Moreover, at no time before or during settlement discussions did Alvarez allege that he had been transferred to the CCRB in retaliation for filing his lawsuit; nor did he ever raise a claim that he was asked to cover up or ignore evidence of police brutality.

On or about March 23, 1998, Internal Affairs orally directed Alvarez to appear for a disciplinary interview in connection with his alleged *improper use of confidential documents*. The interview was to be conducted under oath, as part of what is known as a "PG 118–9 hearing,"[3] to be held on March

---

as the representations made by various attorneys as officers of the Court.

**2.** Alvarez is a graduate of CUNY Law School, but has not yet been admitted to the bar.

**3.** This phrase refers to the governing provision in the NYPD Patrol Guide.

27, 1998. At some point, the interview was postponed until April 8, 1998.

On April 7, 1998, the day before the scheduled interview, Alvarez filed the instant lawsuit and sought a temporary restraining order and preliminary injunctive relief. In the new complaint, he claims that defendants retaliated against him in violation of the First Amendment, Title VII, and the New York State Human Rights Law. Alvarez argues that his transfer to the CCRB and the commencement of the Internal Affairs investigation were motivated by defendants' desire to retaliate against him for filing his initial lawsuit and to punish him for refusing to cover up police misconduct.

In one of the CCRB cases to which he was assigned, two NYPD detectives were accused of unlawfully detaining and arresting an Hispanic male and fabricating charges against him. According to Alvarez, although he obtained evidence that the detectives lied about their conduct, his superiors "warned [him] not to amend the charges or present the case to the Queens District Attorney." (Compl.¶ 30). Alvarez was also allegedly "ordered" not to present damaging evidence against the officers at trial in the internal departmental disciplinary proceedings. (*Id.* ¶ 31).

In fact, however, the two detectives accused of the misconduct that Alvarez allegedly was asked to cover up pled guilty to excessive use of force charges during their departmental trial on February 23, 1998, two days before Alvarez signed his general release, and more than a month before this lawsuit was filed. (*See* 4/17/98 Tr. at 9). Each of the officers forfeited twenty days' vacation time as punishment, and one of the officers has since resigned from the police force. These facts, the accuracy of which are not disputed by plaintiff, were disclosed for the first time by defendants at the April 14, 1998 conference.[4]

At the April 7, 1998 hearing, defendants agreed to voluntarily postpone the Internal Affairs interview of Alvarez until after the April 14, 1998 hearing. At the hearing on

April 14, 1998, defendants again agreed to adjourn any questioning of plaintiff pending a decision by the Court on the instant applications for a temporary restraining order and preliminary injunction.

### CONCLUSIONS OF LAW

#### 1. *Applicable Legal Standards*

▮ A preliminary injunction is "an extraordinary remedy ... that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 117 S.Ct. 1865, 1867, 138 L.Ed.2d 162 (1997) (quoting 11A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure* § 2948, at 129–30 (2d ed.1995)). Injunctions are "the most intrusive sort of judicial relief," especially in the context where, as here, a court is asked to directly interfere with the investigative process of a municipal agency. *Tribune Co. v. Abiola,* 66 F.3d 12, 16 (2d Cir.1995). Accordingly, in cases such as this, the "availability of injunctive relief must be considered with an eye toward the important policies of federalism." *Steffel v. Thompson,* 415 U.S. 452, 481, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

▮ To obtain preliminary injunctive relief, a party must demonstrate (1) a threat of irreparable harm and (2) either (a) a likelihood of success on the merits or (b) "sufficiently serious questions going to the merits to make them fair grounds for litigation *and* a balance of hardships tilting decidedly towards the plaintiff." *See Jayaraj v. Scappini,* 66 F.3d 36, 38 (2d Cir.1995). Where, as here, however, a party seeks to enjoin governmental action, he or she may not rely on the less rigorous "serious questions" alternative of the second prong, but instead must demonstrate a likelihood of success on the merits. *See Able v. United States,* 44 F.3d 128, 131 (2d Cir.), *remanded on other grounds,* 44 F.3d 128 (2d Cir.1995); *Association of Legal Aid Attorneys v. City of New*

---

4. Alvarez's complaint merely discloses that the NYPD "offered a reduced plea to the detectives, also over plaintiff's objection." (Compl.¶ 31).

*York,* No. 96 Civ. 8137, 1997 WL 620831, *2 (S.D.N.Y. Oct.8, 1997).

### 2. *Analysis*

Alvarez argues that the investigation impermissibly "chills" his free speech rights and constitutes illegal retaliation in violation of Title VII and the New York State Human Rights Law. He has failed, however, to demonstrate the necessary elements for injunctive relief.

### a. *Irreparable Harm*

■ Alvarez argues that he has suffered irreparable harm because: (1) the Internal Affairs investigation would chill his speech and other NYPD employees may be deterred from testifying on his behalf; (2) he would face psychological and emotional harm from the investigation; and (3) any punishment resulting from disciplinary action would negatively affect his bar application and his future job prospects by "stigmatiz[ing]" him. (Pl. Mem. at 9).

None of these alleged injuries rises to the level of immediate and irreparable harm sufficient to justify injunctive relief. As to his First Amendment claim, Alvarez must demonstrate "the direct penalization, as opposed to incidental inhibition of, [his] First Amendment rights." *Association of Legal Aid Attorneys,* 1997 WL 620831, at *5 (quoting *Hohe v. Casey,* 868 F.2d 69, 72–73 (3d Cir. 1989), *cert. denied,* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989)). He has failed to do so.

Although Alvarez argues that the investigation itself has chilled his speech, I am not persuaded that the mere initiation of an internal investigation itself would cause irreparable harm.[5] In any event, plaintiff has not shown "direct penalization" of his First Amendment rights. Indeed, the record reveals quite the contrary: since Alvarez was first ordered to speak to Internal Affairs, he has publicly and vociferously raised various allegations of police misconduct. He certainly has not acted like a person whose speech has been substantially deterred.[6] To the extent that plaintiff speculates that other employees' speech may be chilled by the investigation, their First Amendment rights are not at issue.

Furthermore, insofar as Alvarez alleges emotional harm and cites the importance of enforcing antidiscrimination laws, his alleged injuries may be fully remedied, and the statutory purposes of those laws vindicated, by monetary damages should he ultimately prevail. Hence, an injunction is unnecessary. *See Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a late date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Jayaraj,* 66 F.3d at 39 ("Irreparable harm 'means injury for which a monetary award cannot be adequate compensation' ") (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979)).

The remaining allegations of collateral harm to Alvarez are speculative at best. He has offered no evidence that, as a target of an internal NYPD investigation, he would face any imminent danger. Furthermore, any negative effects on his livelihood would arise only in the event he is actually charged with violating departmental regulations or state law and is found guilty of an offense.

---

**5.** Alvarez also argues that the mere initiation of an investigation into his conduct constitutes irreparable harm because the fact of an Internal Affairs investigation is noted on an officer's personnel record. But that being the case, any "damage" is already done, and cannot be undone by the injunction he seeks. I note in any event that a favorable disposition to the investigation also would be noted in Alvarez's file.

**6.** Alvarez's allegations· have received extensive and sympathetic press coverage. *See, e.g.,* Patricia Hurtado, *Cop Fears Revenge,* Newsday, April 10, 1998, at A29 (reporting that Alvarez "fears" retaliation by the NYPD for revealing that he was "ordered by superiors" to cover up an alleged incident involving excessive use of force); Al Guart, *Whistle–Blowing Cop in Hiding,* N.Y. Post, April 10, 1998, at 20 (reporting that Alvarez has gone into hiding from police investigators after going public with claims that NYPD "supervisors routinely order underlings to reduce charges against cops accused of brutality"); David Kocieniewski, *A Police Prosecutor Asserts a Cover–Up in a Beating Inquiry,* N.Y. Times, April 9, 1998, at A1 (same); *NY Cop Alleges Cover–Up in Inquiry,* AP Online, April 9, 1998 (same).

*See Schiavone Constr. v. New York City Transit Auth.,* 593 F.Supp. 1257, 1262 (S.D.N.Y.1984) (refusing to enjoin state investigation and rejecting theory of harm as too tenuous where no indictment had been issued). Finally, any reputational injury sustained by him as the result of criticism by fellow officers or the public would not justify injunctive relief. *See Stewart v. United States Immigration & Naturalization Serv.,* 762 F.2d 193, 199–200 (2d Cir.1985) (holding that damage to reputation alone is insufficient to meet standard of irreparable harm). Plaintiff's contention that the investigation has stigmatized him and damaged his reputation is, of course, undermined by the fact that he and his representatives chose to publicize the NYPD's decision to commence the investigation.

In short, plaintiff fails to show a "specific and present objective harm or a threat of a specific harm." *American Postal Workers Union, AFL–CIO v. United States Postal Serv.,* 766 F.2d 715, 722 (2d Cir.1985) (quoting *Laird v. Tatum,* 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972)).

### b. *Likelihood of Success*

■ Nor has plaintiff demonstrated that he is likely to succeed on the merits.

First, to the extent Alvarez's claims of retaliation are founded on his refusal to participate in the alleged cover-up, he is unable to show causation. Although the "PG 118–9" hearing was scheduled just a couple of weeks after the prior suit was settled, the investigation itself was opened several months earlier, on October 1, 1997, before the case was settled and before Alvarez was assigned to the CCRB. Thus, it cannot be said that the investigation was commenced in retaliation for his settlement of the prior suit or for his purported refusal to participate in a cover-up of police misconduct. In any event, Alvarez welcomed the investigation as a means of clearing his name after the September 26, 1997 conference.[7]

Second, Alvarez's claims of retaliation appear to be barred, at least in substantial part, by the terms of the general release, for those claims are founded on events that transpired prior to the date he executed the release. *See Continental Casualty Co. v. Tillotson,* No. 83 Civ. 8132, 1984 WL 676 (S.D.N.Y. Aug.3, 1984) (enforcing general release to bar not only cause of action that had "actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existing controversies") (quoting *Lucio v. Curran,* 2 N.Y.2d 157, 157 N.Y.S.2d 948, 952, 139 N.E.2d 133 (1956)). The complaint in this case alleges that Alvarez has been subjected to retaliation since October 1996, when he filed the prior action. In addition, Alvarez was transferred to the CCRB in the fall of 1997, well before the settlement was finalized. Similarly, Alvarez alleges that he was "ordered" to obstruct the prosecution of the officers in early February 1998, again before he signed the general release.

While the facts surrounding Alvarez's transfer to the CCRB and the alleged cover-up were not specifically pled in his first complaint, because the claims of retaliation are closely akin to the claims alleged in the first complaint and are based on facts of which Alvarez was aware before he signed the release, they arguably arose "out of the events alleged in the [first] complaint." (Defs.Ex. A). Consequently, any claims arising from these two events reasonably "could have been" and should have been raised during the first litigation. (*Id.*).[8]

---

7. The September 25, 1997 letter is open to the interpretation that the NYPD would not open an investigation into Alvarez's alleged misuse of confidential information unless he did so again. The language, however, is far from clear. Defendants never expressly promised that they would forego an investigation into Alvarez's conduct; rather, they indicated only that they would not do so "at th[at] time." (Pl.Ex. D). Nor did they make any promises, either orally or in writing, to the effect that no investigations were open against him. Moreover, Alvarez entered into a settlement agreement that explicitly disclaimed the binding effect of any oral or written representations not contained therein.

8. Even if this action is not barred by the general release, the complaint would appear to be flawed in other serious respects. For example, plaintiff alleges that he was retaliated against for refusing to participate in an alleged cover-up of police brutality. His reliance on Title VII in this respect, however, is misplaced, for Title VII prohibits retaliation against an employee for engag-

Accordingly, plaintiff has failed to show a likelihood of success on the merits.

### c. *Serious Issues and Balance of Hardships*

Finally, even assuming that it were proper for Alvarez to rely on the second, less demanding alternative of the second prong of the test for a preliminary injunction, and assuming also that Alvarez has raised serious questions going to the merits of the case to make them fair grounds for litigation, the balance of hardships nevertheless weighs decisively in favor of defendants. Alvarez no doubt has faced, and may continue to suffer, some inconvenience and embarrassment as the target of an internal NYPD investigation. But if this were hardship enough to justify preliminary equitable relief, federal courts would be routinely and impermissibly drawn into regulating state and local investigations. And, as noted earlier, in this particular instance, some of plaintiff's purported embarrassment is of his own making.

At the same time, the law counsels against lightly intervening in an ongoing internal investigation by a city agency. While abstention is not warranted under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), because no formal proceeding has yet been initiated against Alvarez, considerations of comity and federalism nevertheless weigh strongly against federal intervention into a pending departmental inquiry. *See Anonymous v. Association of the Bar of the City of New York,* 515 F.2d 427 (2d Cir.) (abstention from interfering with bar association's disciplinary proceedings appropriate), *cert. denied,* 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1975); *Schiavone,* 593 F.Supp. 1257 (declining to enjoin state investigation); *McDonald v. Metro–North Commuter R.R. Div. of Metro. Transit Auth.,* 565 F.Supp. 37 (S.D.N.Y.1983) (comity required that federal court refrain from enjoining Transit Authority's decision to suspend police officer). Here, the City of New York and the NYPD share "a compelling concern in ensuring the honesty and integrity of [their] police officers and federal interference in the enforcement

of that concern" is simply unwarranted. *McDonald,* 565 F.Supp. at 40.

Alvarez has an opportunity to fully exonerate himself during the investigation and during any disciplinary proceeding that may take place. If he is dissatisfied with the result of such a proceeding, avenues of relief short of a federal injunction remain open to him. It appears that, in the event he actually is charged with misconduct and is found guilty, Alvarez could initiate an Article 78 proceeding to challenge the disciplinary determination. In addition, he could seek an injunction from a state court as to the penalties imposed, if any. *See Schiavone,* 593 F.Supp. at 1261 (noting that application for state court injunction after state proceeding would be "far more direct and less intrusive than federal court intervention in the state's criminal investigation"). Plaintiff makes no effort to show that these state law remedies are inadequate.

For all of these reasons, plaintiff has not shown that equitable relief at this stage of the proceeding is justified.

### CONCLUSION

Plaintiff's applications for a temporary restraining order and preliminary injunction are denied.

SO ORDERED.

---

ing in an activity protected by its provisions, that is, opposing employment discrimination in the workplace, 42 U.S.C. § 2000e–3(a), and by alleg-

edly refusing to obscure evidence of police brutality, Alvarez was not opposing employment discrimination in the workplace.