OPINION OF THE COURT
Simons, J.
On December 26, 1981 while driving in the Village of Arcade, New York, defendant was arrested without a warrant and his automobile seized. He was subsequently charged and convicted of criminal possession of a controlled substance in the third degree and criminal possession of hypodermic needles. The contraband upon which his conviction rests was not seized by a search incident to the arrest but was discovered by subsequent searches of his person and automobile authorized by a search warrant issued 30 minutes after the arrest.
Before pleading guilty defendant moved to suppress the evidence, but the suppression court found probable cause for the arrest and the search based on evidence known to the police through their investigation and on hearsay information supplied them by an informant. The Appellate Division reversed the judgment, granted the motion to suppress and remitted the matter to County Court for further proceedings on the indictment (see, 105 AD2d 1110). It found probable cause lacking for both the arrest and the search because the police failed to demonstrate the informant’s basis of knowledge under the Aguilar-Spinelli rules applicable to the evaluation of hearsay (see, Aguilar v Texas, 378 US 108; Spinelli v United States, 393 US 410). The court noted, however, that it would find the warrant application sufficient under the "totality of the circumstances” test enunciated by the United States Supreme Court in Illinois v Gates (462 US 213), if this court adopted that test.
As we have noted before, probable cause determinations that involve questions of fact, or mixed questions of law and fact, are generally beyond the jurisdiction of this court (see, People v McRay, 51 NY2d 594, 601; People v Wharton, 46 NY2d 924, 925, cert denied 444 US 880). When the issue is the minimum showing necessary to establish probable cause, how *421 ever, a question of law is presented for our review (see, People v Johnson, 66 NY2d 398 [decided herewith]; People v McRay, supra). This appeal raises such a question.
The police first became suspicious of defendant during an investigation of drug trafficking in the western New York area when they acquired information which led them to suspect that defendant was involved in narcotics transactions. Specifically, the police learned that defendant had telegraphed almost $25,000 to a Florida resident over a four-month period and that the address to which the money was sent was near an area of Florida known for drug activity; that he had rented a post-office box in Caneadea, New York, where he had received two packages from Florida, one in August 1981 and the other in September of 1981; that defendant had rented a post-office box in Arcade, New York, and that he had received mail there in December 1981. Finally, the police knew that defendant frequented the apartment of Kenneth Sutz, a known drug user and sometime drug dealer.
On December 24, 1981 the police observed defendant go to the Arcade Post Office, apparently to pick up a package from Florida addressed to him. He was unable to do so because the post office was closed. The police returned to the post office on December 26, 1981 and saw defendant pick up a package and then drive to the Sutz apartment. While some officers maintained the surveillance of the Sutz apartment, two others returned to the Arcade Police Department and contacted an informant who had previously indicated he had some knowledge about defendant and Sutz. The informant came to the station and was interviewed by a police officer for approximately 15 minutes. He told the officers that the defendant was a "drugger” who had arrived in the Arcade area from Florida during the summer of 1981, that he had no job but plenty of money, that he was dealing in cocaine shipped from Florida and that he had a close relative in Florida. The informant told the police that the defendant had conducted drug transactions as recently as "Christmas week of 1981.” (The suppression court found, however, that the informant had not seen defendant sell drugs or in possession of them at any time.)
After the interview with the informant had concluded, one of the officers telephoned a local County Judge and requested him to come to the police department to issue a search warrant based upon an application being prepared. Before the application could be completed or the warrant signed, how *422 ever, the officer received word that the defendant had left the Sutz apartment, put a suitcase in his car, and driven away. The officers left the station, joined the surveillance team and helped intercept defendant’s automobile. Defendant was asked to get out, frisked, read his Miranda rights and then taken to the police station where he was held and his automobile impounded until the search warrant was executed. Defendant was seized within the meaning of the 4th Amendment proscriptions at that time and unless the police had probable cause to hold him, his arrest was unlawful (see, Dunaway v New York, 442 US 200, 207).
The County Judge arrived at the station after defendant had been taken into custody. After reading the warrant application and taking in camera testimony from the officer (the Judge did not interview the informant), he approved a search warrant authorizing police to search defendant’s person and vehicle for cocaine. When the police executed the warrant, they discovered a quantity of amphetamines, hypodermic needles and over $4,500 in cash, but no cocaine. Defendant was formally arrested and, after his motion to suppress the evidence was denied, he pleaded guilty.
The People contend that the arrest was lawful, but that even if it was not, the conviction should be upheld because the search warrant was supported by probable cause under the Aguilar-Spinelli test and the contraband seized pursuant to it supplied the necessary evidence of guilt. Alternatively, they claim the evidence supporting the warrant established probable cause when judged by the "totality of the circumstances” test recently adopted by the Supreme Court in Illinois v Gates (462 US 213, supra). Finally, they claim that even if probable cause was not demonstrated, the police acted in objective good faith in executing the warrant and, therefore, under United States v Leon (468 US 897, 104 S Ct 3405, 82 L ed 2d 677, reh denied 82 L ed 2d 942), the exclusionary rule does not require suppression of the evidence. The People did not urge below that exigent circumstances justified the police action and consequently the courts did not rule on that issue.
 There should be an affirmance. The evidence in the record does not support a finding of probable cause for the arrest or the search when measured by either the AguilarSpinelli rule or the Gates rule and exclusion cannot be avoided because, as a matter of State constitutional law, we decline to apply the Leon good-faith standard. Our analysis *423 traces traditional lines of authority, compares the rule in Illinois v Gates and its effect on these facts and then considers the People’s contention that the "good faith” exception stated in United States v Leon (supra) warrants admission of the evidence seized pursuant to the warrant. Our discussion of the Gates holding addresses the People’s contentions. It is not intended as approval or adoption of that decision as a matter of State constitutional law.
Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place (People v McRay, 51 NY2d 594, 602, supra; see also, Brinegar v United States, 338 US 160, 175, reh denied 338 US 839). The legal conclusion is to be made after considering all of the facts and circumstances together. Viewed singly, these may not be persuasive, yet when viewed together the puzzle may fit and probable cause found (see generally, Illinois v Gates, 462 US 213, 231-235, supra; United States v Davis, 458 F2d 819, 821; 1 LaFave, Search and Seizure § 3.2 et seq.).
Probable cause may be supplied, in whole or part, through hearsay information (see, People v Landy, 59 NY2d 369, 375; People v Rodriguez, 52 NY2d 483, 488-489; People v Hanlon, 36 NY2d 549, 556). New York’s present law applies the Aguilar-Spinelli rule for evaluating secondhand information and holds that if probable cause is based on hearsay statements, the police must establish that the informant had some basis for the knowledge he transmitted to them and that he was reliable (People v Landy, supra, p 375; People v Rodriguez, supra, pp 488-489, citing Aguilar v Texas, 378 US 108, 114, supra; People v Hanlon, supra, p 558; cf. Illinois v Gates, 462 US 213, supra).
There are two ways to verify whether an informant knows what he is talking about (People v Elwell, 50 NY2d 231; cf. People v Hendricks, 25 NY2d 129, 134). The most reliable is through his own description of underlying circumstances personally observed (see, People v Johnson, 66 NY2d 398 [decided herewith], supra; People v Rodriguez, supra; People v Wheatman, 29 NY2d 337, cert denied sub nom. Marcus v New York, 409 US 1027, reh denied 409 US 1119). Failing this, however, an informant’s basis of knowledge may be verified by police investigation that corroborates the defendant’s actions or that *424 develops information consistent with detailed predictions by the informant (People v Rodriguez, supra). Thus, we have credited hearsay information to uphold a warrantless search or arrest where the police observe conduct suggestive of, or indirectly involving, criminal activity about which an informant provided minutely detailed information to the police (compare, People v Rodriguez, supra, p 493; and People v Elwell, supra, p 241).
The People failed to satisfy the "basis of knowledge” requirement in this case. The informant’s statement contained no allegations indicating that the information was based upon personal observation (the suppression court found that it was not) and the informant’s statements did not describe defendant’s activities with sufficient particularity to warrant an inference of personal knowledge. The one specific was that defendant dealt in cocaine but no cocaine was recovered in the search and, from all that appears, the hearsay was based on nothing more than rumor and might well have been fabricated. At best, the behavior of the defendant, as observed by police, and the facts they discovered through investigation were capable of innocent interpretation and were never more than equivocal (see, People v McRay, 51 NY2d 594, 602, supra; People v West, 44 NY2d 656, 658). The informant’s evidence added nothing to this but evidence of reputation. The police relied upon precisely the same information in arresting defendant and in obtaining the search warrant and it did not supply probable cause for either action under the AguilarSpinelli rules.*
The People urge that probable cause may be found under the "totality of the circumstances” rule adopted by the Su *425 preme Court in Illinois v Gates (462 US 213, supra). We have not previously had occasion to consider application of the Gates test to warrant situations but we have held, as a matter of State constitutional law, that the rule does not apply to warrantless arrests (see, People v Johnson, 66 NY2d 398 [decided herewith], supra). There is no reason for us to adopt it in testing this search warrant because the People’s evidence would not meet minimum standards of probable cause even if Gates was applied.
In Gates, the Supreme Court abandoned the two-pronged veracity and basis of knowledge test of Aguilar-Spinelli and adopted in its place a totality of the circumstances analysis giving greater deference to the magistrate’s determination: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity’ and 'basis of knowledge’ of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * concluding]’ that probable cause existed” (Illinois v Gates, supra, pp 238-239, quoting Jones v United States, 362 US 257, 271).
Under the Gates rule, reliability and basis of knowledge are not two separate, compartmentalized inquiries both of which must be satisfied before a determination of probable cause may be made but, rather, constitute only relevant considerations. Thus, a deficiency in one may be compensated by a strong showing in the other, or by other information available to the police (Illinois v Gates, 462 US 213, 232-235, supra; see also, Massachusetts v Upton, 466 US 727). A conclusory statement from an officer or an informant cannot serve as the basis for a finding of probable cause, but no per se rule precludes the issuance of a warrant if the application contains more.
In Gates, the police received an anonymous letter that provided detailed information concerning the activities, movements and plans of the Gates and of their modus operandi for acquiring drugs in Florida and transporting them to Illinois. The letter contained specific dates concerning when defendants would go to Florida to pick up drugs, where they would go and when they would return. Upon receiving the letter, the police conducted an extensive investigation in Illinois and Florida that corroborated the hearsay information in several *426 important details and that established that the informant’s predictions of defendant’s activities were generally accurate. Although the hearsay information was explicit, the letter did not reveal any apparent basis for the informant’s knowledge. The Supreme Court balanced that omission against the reliability of the information as corroborated by the police investigation confirming the hearsay predictions and found that the evidence strongly suggested defendants were involved in a criminal scheme. Accordingly, the court sustained the magistrate’s finding of probable cause, holding that when the information possessed by the police was viewed as a whole the deficiency in establishing the informant’s basis of knowledge was compensated for by the remaining evidence.
In the present case, police investigation developed evidence that defendant had transmitted money to Florida, that he maintained two post-office boxes in the area and that he had received two packages from Florida over a period of months, plus a third package before the Christmas holidays. All these activities were conducted by defendant in his own name without any effort at concealment and, as County Court conceded, were susceptible of innocent explanation. Although the hearsay information corroborated the activities observed by the police, it added nothing to them other than the informant’s conclusory assertion that defendant was a "drugger” and it does not appear from the record that that conclusion was based on anything but rumor or fabrication. Moreover, this failure to demonstrate the informant’s basis of knowledge was not compensated for by his reliability, for the only relevant facts in the record stated that he had given information to the police leading to an arrest three years earlier but that the charges had resulted in an acquittal. Thus, neither facts known independently to the police nor the informant’s reliability balanced off or compensated for the absence of the informant’s basis of knowledge and when viewed in its entirety, the information known to the police did not provide a substantial basis to conclude that probable cause existed under the standards of Illinois v Gates (462 US 213, supra).
Finally, the People urge that even if the warrant was issued without probable cause, the evidence should not be suppressed because the police were acting in good faith (see, United States v Leon, 468 US 897, supra; Massachusetts v Shepard, 468 US 981; cf. People v Adams, 53 NY2d 1, 9-10, cert denied 454 US 854). They note that the search of defendant and his automo *427 bile was conducted pursuant to a warrant authorized by the County Judge and that the police conducted the search believing that the warrant was valid.
The Supreme Court based the Leon decision on the premise that the exclusionary rule is intended to deter police misconduct. Because the court found in that case that no deterrent purpose would be served by excluding the evidence the police had seized in objective good-faith reliance on a warrant mistakenly issued by the magistrate, the court refused to suppress it. Whether or not the police acted in good faith here, however, the Leon rule does not help the People’s position. That is so because if the People are permitted to use the seized evidence, the exclusionary rule’s purpose is completely frustrated, a premium is placed on the illegal police action and a positive incentive is provided to others to engage in similar lawless acts in the future (see, 3 LaFave, op. cit. § 11.4, at 645, 1985 Pocket Part, at 319-320). We therefore decline, on State constitutional grounds, to apply the good-faith exception the Supreme Court stated in United States v Leon (supra).
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Meyer, Kaye and Alexander concur with Judge Simons; Judges Jasen and Titone concur in result for reasons stated in Judge Titone’s concurring opinion in People v Johnson (66 NY2d 398, 408 [decided herewith]).
Order affirmed.

 Courts generally exercise a higher level of scrutiny when reviewing probable cause determinations made by police acting without a warrant than when reviewing determinations made by a detached and neutral magistrate. Indeed, it is frequently said that a lower quantum of evidence of probable cause is sufficient to sustain a search or arrest authorized by a warrant (see, People v Elwell, 50 NY2d 231, 241-242; People v Hanlon, 36 NY2d 549, 558-559; Illinois v Gates, 462 US 213; Massachusetts v Upton, 466 US 727; see, United States v Ventresca, 380 US 102, 109-112; Johnson v United States, 333 US 10, 13-14; see generally, 1 LaFave, Search and Seizure § 3.1 [c], at 171-173). Arguably, then, the arrest in this case might be found unlawful and, because of the courts’ preference for warrants, the conduct of the police when acting upon the search warrant supported by precisely the same quantum of evidence of probable cause could be sustained. We find a failure of evidence supporting probable cause, however, even under the more relaxed standard of proof sometimes suggested for warrant cases.