THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
STEWART A. GRIMINGER, Appellant.

Second Department, April 6, 1987

## APPEARANCES OF COUNSEL

*Hoffman, Pollok & Gasthalter (Edward Gasthalter* and *John Pollok* of counsel), for appellant.

*Denis Dillon, District Attorney (Anthony J. Girese* and *Denise Parillo* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J.

On appeal to this court from two judgments rendered upon his pleas of guilty to three charges involving the possession and sale of marihuana, the defendant assigns error to the denial of those branches of his pretrial motion which were to dismiss the indictment and to suppress physical evidence and

statements. Among the questions we address is whether, as a matter of State constitutional law, the sufficiency of the factual showing of probable cause in an application for a search warrant is to be measured by the traditional "two-pronged" test *(see, Aguilar v Texas,* 378 US 108; *Spinelli v United States,* 393 US 410) or by the "totality of the circumstances" standard announced in *Illinois v Gates* (462 US 213, *reh denied* 463 US 1237). In addressing this and the other questions presented, we must accord great deference to the factual determinations of the hearing court and, because those findings are adequately supported by the record, we decline to disturb them *(see, People v Prochilo,* 41 NY2d 759, 761; *People v Watkins,* 121 AD2d 583, 584, *lv denied* 68 NY2d 918; *People v Gee,* 104 AD2d 561). The hearing court's factual findings, insofar as they are pertinent to the issues raised on this appeal, will be briefly summarized.

On August 23, 1983, Agents Winfree and Rosoff of the United States Secret Service were engaged in an investigation involving the passing of counterfeit currency in Nassau County. Having received information that somebody using a car registered to Gertrude Griminger, the defendant's mother, had attempted to pass a counterfeit bill at a nearby gas station, and that the car had thereafter been reported stolen, the agents, in the furtherance of their investigation, went to the Griminger home in Oceanside on that day. As they arrived, they saw the defendant place a blue bag in the trunk of a white car parked in the driveway.

Winfree and Rosoff identified themselves and were admitted into the house, where they spoke with the defendant and his mother. The agents were told that the defendant had indeed been using the car on the date of the alleged crime, although he denied any involvement in counterfeiting. He did admit, however, that he knew one Troy Lambe, who was known by the agents to be a suspect in other cases involving counterfeit currency, and the defendant agreed to notify the agents in the event he contacted Lambe.

As they were leaving the house, the agents requested and received permission to search the car for the blue bag that they had seen earlier, but their search proved unsuccessful. In response to the agents' inquiry, the defendant claimed that he did not know what had happened to the bag, and he suggested that it might have been stolen. The agents then secured the defendant's consent for a further search of the area, and discovered the bag in a garbage can adjacent to the house. The

bag was opened and was found to contain a quantity of marihuana. The defendant was asked by Winfree whether the marihuana was his, and the defendant conceded that it was, although he maintained that it was strictly for personal use.

The agents then reentered the house with the defendant and his mother, and the defendant was advised of his *Miranda* rights, which he acknowledged and waived. The agents questioned the defendant further regarding his involvement with counterfeit currency and his relationship with Troy Lambe, and he gave a written statement in which he admitted having been present when Lambe passed counterfeit bills. Also, the defendant agreed to cooperate with the agents in their investigation. The agents left the defendant's home with the understanding that they would return later that evening with electronic recording equipment for the purpose of obtaining an incriminating statement from Lambe.

However, upon returning to the defendant's house, the agents learned that the defendant had consulted with counsel and would not cooperate in the absence of a formal agreement with the United States Attorney. The agents contacted Assistant United States Attorney Rose, who, in turn, contacted the defendant's attorney. The attorneys arrived at an agreement whereby the defendant would not be prosecuted on any counterfeiting charge if, among other things, (1) his prior involvement was limited to having been present when counterfeit bills were passed, (2) he cooperated by introducing an undercover agent to Lambe or by meeting or speaking with Lambe and surreptitiously recording his incriminating statements, and (3) he testified truthfully at any future proceedings. With respect to the marihuana, the Assistant United States Attorney agreed that if the defendant complied with the foregoing conditions, he would not be subjected to Federal prosecution. Moreover, although it was acknowledged that he could not bind State prosecutors, the Assistant United States Attorney agreed that the marihuana would not be turned over to State authorities, thereby precluding State prosecution as a practical matter.

Thereafter, the defendant called and met with Lambe at the request of Winfree and Rosoff, but these attempts to secure incriminating statements from Lambe proved to be unsuccessful. Then, on August 25, 1983, the agents executed a Federal warrant for the arrest of Lambe. During the ensuing interrogation, they were told by Lambe's mother that the defendant was a known drug seller and that, on his previous visits to the

Lambe house, the defendant had given a signal so as to warn them that he was "wired" to record his conversations with Lambe. Lambe himself told the agents that he had often seen drugs and related paraphernalia in the defendant's house and he had been present when the defendant bought and sold drugs.

Based upon the foregoing, the agents and the Assistant United States Attorney concluded that the defendant had not been truthful about his own criminal activities and had compromised the investigation and violated the cooperation agreement. Accordingly, they applied to a United States Magistrate for a warrant to search that portion of the defendant's home consisting of his upstairs bedroom and the adjacent attic for approximately 150 pounds of marihuana, an unspecified quantity of cocaine, an unknown quantity of currency, a scale and plastic bags. Although the agents had taken a written statement from Lambe, it was not included in the warrant application and, although the Magistrate arraigned Lambe shortly before the application was presented, Lambe was not produced before the Magistrate to give testimony in connection therewith. The application presented to the Magistrate consisted solely of an affidavit of Agent Winfree in which he alleged, upon information and belief, that the drugs and related contraband were presently concealed in the premises to be searched. Winfree identified the source of his information as "Confidential source 'A' ", a person known to him, who had advised him that he had often been at the premises in the company of the defendant during the preceding two months and had observed, on each occasion, marihuana and white powder identified by the defendant as cocaine, as well as a scale and quantities of United States currency and plastic bags. Furthermore, " 'A' " had advised Winfree that the defendant had provided marihuana and cocaine to him, and that the defendant had, while in his presence, sold those substances to others. " 'A' " had further advised Winfree that he had seen approximately 150 to 200 pounds of marihuana in the premises to be searched as recently as seven days previously. In addition to the information provided by " 'A' ", Winfree's affidavit included a description of the seizure of marihuana from the garbage can adjacent to the defendant's house on August 23, 1983, and the defendant's admission that the marihuana in question was his. The Magistrate was never told that " 'A' " was Troy Lambe nor that " 'A' " was under arrest at the time he provided his information, nor was the

Magistrate given any additional information regarding Lambe's reliability or lack thereof. In fact, Lambe had never before provided information or acted as an informant, and his reliability had never before been determined.

On August 26, 1983, Agents Winfree and Rosoff, accompanied by members of the Nassau County Police Department, executed the search warrant and seized about 10 ounces of marihuana, plastic bags, a triple-beam balance scale and more than $6,000 in currency.

The defendant was subsequently charged by indictment with one count of criminal possession of marihuana in the second degree, relating to the defendant's possession of the marihuana found in the garbage can outside his house on August 23, 1983, and one count of criminal possession of marihuana in the third degree, relating to the defendant's possession of the marihuana seized from his room during the execution of the search warrant on August 26, 1983. In addition, the defendant was charged by superior court information with one count of criminal sale of marihuana in the third degree, based upon an apparently unrelated sale of marihuana on or about May 10, 1984.

In his pretrial omnibus motion, the defendant sought dismissal of the indictment based upon the purported violation of his agreement with the Federal authorities. He also sought, *inter alia,* suppression of the marihuana seized on August 26, 1983, pursuant to the execution of the search warrant, which marihuana provided the basis for count two of the indictment, as well as suppression of his alleged admission to Winfree and Rosoff that the marihuana found in the garbage can outside his home on August 23, 1983, was his and was intended for personal consumption.

Upon the foregoing findings of fact, the hearing court denied those branches of the defendant's motion and, on appeal, the defendant contends that the denial was erroneous in each instance.

■ Considering first that branch of the motion which was to dismiss the indictment, we conclude that dismissal was not warranted under the circumstances, inasmuch as the Nassau County District Attorney's office was not a party to and was in no way bound by the cooperation agreement struck between the defendant and the Federal prosecutor. Even if we accept, despite the existence of considerable evidence to the contrary, the hearing court's finding that the defendant did not breach

the agreement so as to permit the Federal authorities to disregard it, it was nevertheless clearly understood by all parties that the District Attorney constituted an entirely separate and independent prosecutorial authority which was not and could not be bound by that agreement *(see, Schiavone Constr. Co. v New York City Tr. Auth.,* 593 F Supp 1257, 1259, n 4; *cf., United States v Sackinger,* 704 F2d 29, 32; *United States v Ng,* 699 F2d 63, 68). Although justice may require one agency of the State of New York to abide by a promise made by another agency of the State *(see, Matter of Chaipis v State Liq. Auth.,* 44 NY2d 57, 64), public policy does not permit a Federal prosecutor to enter into an agreement which serves to divest an independent State prosecutor such as a District Attorney of his lawful discretion *(see, Matter of Chaipis v State Liq. Auth., supra,* at 64), particularly where, as here, the defendant did not alter his position to his detriment as a result of his agreement with the Assistant United States Attorney *(cf., Matter of Chaipis v State Liq. Auth., supra).* Thus, the subsequent State prosecution of the defendant did not amount to egregious or reprehensible conduct which was violative of due process principles so as to require dismissal *(cf., People v Isaacson,* 44 NY2d 511, *rearg denied* 45 NY2d 776).

The defendant also challenges the denial of that branch of his motion which was to suppress his statement to Agents Rosoff and Winfree on August 23, 1983, to the effect that the marihuana found by the agents in the garbage can was his and was intended for his own use. The defendant argues that once the agents found the marihuana, he was effectively placed in custody, so that the agents were required to administer *Miranda* warnings *(see, Miranda v Arizona,* 384 US 436) prior to questioning him as to ownership of the marihuana. However, in deciding whether a suspect was in custody at the time of questioning, the subjective beliefs of the particular suspect are not determinative; rather, the appropriate test is whether a reasonable man, innocent of any crime, would have considered himself in custody had he been in the defendant's position *(see, People v Yukl,* 25 NY2d 585, 589, *rearg denied* 26 NY2d 883, *mot to amend remittitur denied* 26 NY2d 845, *cert denied* 400 US 851; *see also, Matter of Kwok T.,* 43 NY2d 213, 219-220; *People v Dorsey,* 118 AD2d 653, *lv denied* 67 NY2d 1052; *People v Oates,* 104 AD2d 907). In this case, there is ample evidentiary support for the hearing court's conclusion that the defendant was not in custody when he was asked

about the marihuana *(see, People v Oates, supra,* at 910). In particular, the defendant's encounter with the Federal agents occurred at his home, in the presence of his mother, and there was no evidence that the defendant was subjected to physical restraint or that he was deprived of his freedom of action in any significant manner *(see, People v Dorsey, supra; People v Oates, supra,* at 911).

We now consider the defendant's contention that the evidence seized upon the execution of the search warrant on August 26, 1983, should have been suppressed. The hearing court refused to suppress the evidence in question upon the ground that although the warrant application was deficient under the "two-pronged" *Aguilar-Spinelli* test *(see, Aguilar v Texas,* 378 US 108, *supra; Spinelli v United States,* 393 US 410, *supra),* it contained sufficient information to pass constitutional muster under the less stringent "totality of the circumstances" test *(see, Illinois v Gates,* 462 US 213, *supra).* Although we agree with the hearing court's determination under the *Aguilar-Spinelli* test, we conclude that it was error to apply the *Gates* test and, on that basis, to deny suppression.

Under the *Aguilar-Spinelli* rule, which is presently applicable in this State *(see, People v Bigelow,* 66 NY2d 417, 423), the showing of probable cause in an application for a search warrant may be based upon hearsay information, so long as the application establishes that the informant had an adequate basis for the knowledge he transmitted to the applicant (i.e., the "basis of knowledge" prong) and that the informant was reliable (i.e., the "veracity" prong) *(see, People v Bigelow, supra,* at 423-425; *see also, People v Johnson,* 66 NY2d 398, 402; *People v Landy,* 59 NY2d 369, 375).

In the present case, the warrant application of Agent Winfree reflected that the informant " 'A' " had been present at the defendant's home in the company of the defendant and had personally observed the drugs and related items to be seized. Thus, the application may have satisfied the "basis of knowledge" prong *(see, People v Bigelow, supra,* at 423). However, it was also incumbent upon the applicant to set forth facts establishing that the informant was reliable, and the application in this case was plainly deficient in that regard. Although there is "no one acid test of reliability" *(People v Rodriguez,* 52 NY2d 483, 489), the factors which may be relied upon to establish that an informant is worthy of belief include, among other things, the informant's previous history as a supplier of accurate information to the police *(see, People v*

*Johnson, supra,* at 403; *People v Rodriguez, supra,* at 489), that the informant provided the information under oath *(see, People v Johnson, supra,* at 403; *People v Rodriguez, supra,* at 489; *People v Wheatman,* 29 NY2d 337, 345-346), that the informant's statement to the police was against his penal interest *(see, People v Johnson, supra,* at 403; *People v Comforto,* 62 NY2d 725), or that independent police investigation corroborated the details of the information imparted by the informant *(see, People v Johnson, supra,* at 403; *People v Rodriguez, supra,* at 490). In this case, the warrant application did not identify the informant " 'A' " as Troy Lambe, nor did it incorporate Lambe's written statement. There was no allegation that the informant " 'A' " had provided law enforcement authorities with accurate information on prior occasions. Moreover, the statement by " 'A' " to Winfree that he had received quantities of marihuana and cocaine from the defendant on some unspecified occasion or occasions was not sufficiently contrary to his penal interests to establish reliability, inasmuch as his statement admitting possession of drugs in the past would not likely be used against him *(see, People v Johnson, supra,* at 403-405; *cf., People v Comforto, supra).* It is also significant that the United States Magistrate to whom the application was presented was not apprised that " 'A' " was, at the time of his statement, under arrest and aware of the defendant's agreement to cooperate with Federal authorities against him. Finally, the independent seizure of marihuana by the Federal agents outside of the defendant's home on August 23, 1983, did not constitute corroboration sufficient to establish the reliability of " 'A' ", who provided no information regarding that particular quantity of marihuana *(see, People v Johnson, supra,* at 405). Thus, the hearing court correctly determined that the application was not sufficient under the *Aguilar-Spinelli* test.

That court erred, however, in its determination that the *Aguilar-Spinelli* test is no longer applicable in this State, having been replaced by the *Gates* "totality of the circumstances" standard *(see, Illinois v Gates,* 462 US 213, 230, *supra).* Although the State courts are bound by the decisions of the Supreme Court of the United States insofar as those decisions interpret the Federal Constitution, we have long interpreted our own State Constitution in a manner which broadens the scope of protection accorded to certain individual rights by the Federal Constitution *(see, People v P. J. Video,* 68 NY2d 296, 301-303, *cert denied* — US —, 107 S Ct 1301).

Thus, in interpreting NY Constitution, article I, § 12, which proscribes unreasonable searches and seizures, the State courts have not hesitated to forgo conformity with the Supreme Court's interpretation of its Federal constitutional counterpart, the Fourth Amendment, in order to promote " 'predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens' " *(People v P. J. Video, supra,* at 304, quoting from *People v Johnson,* 66 NY2d 398, 407, *supra).* To that end, the Court of Appeals has held, as a matter of State constitutional law, that the less protective rule adopted in *Illinois v Gates* has not supplanted the *Aguilar-Spinelli* test in cases involving warrantless arrests predicated on hearsay information *(see, People v Johnson, supra,* at 406; *see also, People v P. J. Video, supra,* at 305; *People v Landy,* 59 NY2d 369, 375, *supra).* With regard to cases involving warrants, such as the case *sub judice,* the Court of Appeals has declined the invitation to reach out to adopt the *Gates* test *(see, People v Bigelow,* 66 NY2d 417, 424-425, *supra; see also, People v P. J. Video, supra,* at 305), and it has also rejected the application of the good-faith exception to the Fourth Amendment's warrant requirement *(see, United States v Leon,* 468 US 897) in such cases *(see, People v Bigelow, supra,* at 427; *see also, People v P. J. Video, supra,* at 305). Thus, although the applicability of the "totality of circumstances" test to measure the sufficiency of search warrant applications remains, technically, an unsettled question in New York, we conclude, in the face of the recent decisions of the Court of Appeals discussed above, that the *Aguilar-Spinelli* standard is to be applied in such cases as a matter of State constitutional law. If the *Gates* test is to be judicially incorporated into NY Constitution, article I, § 12, it must remain for the Court of Appeals to do so. Accordingly, that branch of the defendant's motion which was to suppress the evidence seized on August 26, 1983, pursuant to the execution of the search warrant, must be granted.

In view of the fact that we are suppressing the evidence which provided the basis for the charge of criminal possession of marihuana in the third degree under count two of the indictment, we must reverse the sentence imposed thereon and vacate the defendant's plea of guilty to that charge. Moreover, because it appears that the defendant's pleas of guilty to criminal possession of marihuana in the second degree under the remaining count of the indictment, and to criminal sale of marihuana in the fourth degree in satisfaction

of the superior court information, were induced, in part, by the promise that concurrent sentences would be imposed as to all three convictions, we must reverse both judgments in their entirety and remit to the County Court for further proceedings *(see, People v Fuggazzatto,* 62 NY2d 862, 863; *People v Clark,* 45 NY2d 432, 440, *rearg denied* 45 NY2d 839; *People v Martin,* 115 AD2d 565, 568).

In view of our determination, we need not address the defendant's claim that the sentences imposed were excessive.

THOMPSON, J. P., RUBIN and EIBER, JJ., concur.

Ordered that the judgments are reversed, on the law, that branch of the defendant's motion which was to suppress physical evidence is granted to the extent that evidence seized upon the execution of the search warrant on August 26, 1983, is suppressed, and the matters are remitted to the County Court, Nassau County, for further proceedings. The findings of fact have been considered and determined to have been established.