■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEON MURRAY, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Egitto, J.), rendered June 22, 1984, convicting him of attempted murder in the second degree and attempted robbery in the first degree (two counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress certain statements made by him to the police.

Ordered that the judgment is reversed, on the law, the conviction of attempted murder is vacated, that count of the indictment is dismissed, that branch of the defendant's omnibus motion which was to suppress statements is granted, the counts of attempted robbery in the first degree are severed, and a new trial is ordered on those counts *(see,* CPL 470.20 [1]).

In the early morning hours of April 30, 1983, Police Officer Emery Blake was shot during an attempted robbery by two males in the vicinity of Kingston Avenue and Pacific Street in Brooklyn. Later that day, after conducting his own personal investigation in the area, Police Officer Nathaniel Green received an anonymous telephone call in which the caller informed him that a third person had information about the shooting. A meeting was set up, and Officer Green met this third person who told him that he had overheard the defendant's brother say that the defendant had been shot in the leg and was walking with a crutch because he had tried to rob somebody earlier that morning on Pacific Street. The informant also provided Officer Green with the defendant's address, and then left. Green then passed on this information to Detective Albert Cachie. Green did not know the anonymous informant's name, address, or occupation.

Detective Cachie and several other officers, including Detective Henry Ahearn, discussed the information and then proceeded to the defendant's apartment, arriving at about 10:00 P.M. After entering the apartment, without a warrant, and after observing a crutch in the hallway and a wound in the defendant's leg (which, in response to their questioning, the defendant told the police was a stab wound), the police arrested the defendant and drove him to the precinct, arriving at about 10:15 P.M. The defendant was then questioned in a squad room by several detectives about his leg wound, and he repeatedly answered that it was a stab wound. The police expressed disbelief. He then asked to speak with Detective Ahearn alone, and they went into a smaller room together. The defendant then gave a different exculpatory version—that he was with the codefendant, Juan Irby, when Officer Blake was held up, but that he did not know that Irby was going to attempt a robbery, and that he became caught in the crossfire between Irby and Blake. Ahearn again expressed disbelief and told the defendant that if he told the truth, he (Ahearn) would tell his supervisors who were in charge of the case that the defendant had cooperated, and, if asked, he would tell the same to the District Attorney. The defendant then made a statement admitting his participation in the attempted robbery in question. The hearing court denied the defendant's application to suppress his statements. We find that the defendant's statements to the police were inadmissible as the fruit of an unlawful arrest made without probable cause.

When, as here, the asserted probable cause to arrest is based on hearsay information supplied by an informant, it

must be established that the informant has some "basis of knowledge" for the information and that he or his information is reliable *(see, e.g., People v Bigelow,* 66 NY2d 417, 423; *People v Johnson,* 66 NY2d 398; *cf., Spinelli v United States,* 393 US 410; *Aguilar v Texas,* 378 US 108). In this case, the informant's "basis of knowledge" *(People v Bigelow, supra),* was merely an overheard statement. He did not have personal knowledge of the crime, nor did he observe the crime being committed. Moreover, there is no indication that the informant's source of information (the defendant's brother) observed any criminal activity. Rather, it appears that he merely heard about it from yet another person. In such a situation, a sufficient "basis of knowledge" *(People v Bigelow, supra)* does not exist unless the police independently observe conduct suggestive of, or directly related to, the criminal activity informed about which corroborates the informant's statement *(see, People v Elwell,* 50 NY2d 231, 234). In the case at bar, the police merely observed on their own that the defendant did live at the address given, that he had a leg wound, and that there was a crutch in his hallway. These observations, although perhaps sufficient to establish the informant's reliability, were clearly not sufficient to indicate the defendant's involvement in the criminal activity informed about, but were open to innocent interpretation, and thus failed to establish the informant's basis of knowledge *(see, e.g., People v Elwell, supra,* at 233-237; *see also, People v Bigelow, supra; People v Johnson, supra; People v Rodriguez,* 52 NY2d 483; *People v Wirchansky,* 41 NY2d 130). Thus, the warrantless arrest of the defendant was improper as it was made without probable cause.

We further find that there was no intervening event between the unlawful arrest and the defendant's confession which attenuated or dissipated the taint of the primary illegality or broke the causal connection between the unlawful arrest and the defendant's subsequent confession *(see, e.g., Dunaway v New York,* 442 US 200; *Brown v Illinois,* 422 US 590; *People v Conyers,* 68 NY2d 982). We do not find Detective Ahearn's promise to inform his supervisors of the defendant's cooperation if the defendant told the truth to constitute such an intervening event. Therefore, the defendant's statements should have been suppressed, and since they contributed to his conviction, we order a new trial on the counts of attempted robbery in the first degree *(see,* CPL 470.20 [1]).

We agree with the defendant, and the People also concede, that there was insufficient evidence, as a matter of law, to

establish defendant's guilt of attempted murder in the second degree. Therefore, the defendant's conviction on that count of the indictment is vacated and dismissed.

In view of our determination, we do not find it necessary to review the defendant's other claims. Lawrence, J. P., Kunzeman, Kooper and Spatt, JJ., concur.