Rivera, J.
(dissenting). The courts of this state have consistently held that a police officer’s mistake of law cannot provide the requisite probable cause for a valid search and seizure. It is also well-established that evidence obtained as a result of a seizure lacking probable cause must be suppressed. Given this legal landscape, I disagree with the majority’s conclusion that under our State Constitution an officer’s erroneous belief that *141 a driver violated the law may provide probable cause for a vehicular stop, and, regardless of the driver’s innocence, a court may admit evidence obtained as a consequence of the officer’s mistake. Therefore, I dissent.
L
A vehicular stop is valid under New York State’s Constitution when “a police officer has probable cause to believe that the driver of an automobile has committed a traffic violation” (People v Robinson, 97 NY2d 341, 349 [2001]; see NY Const, art I, § 12). As the majority correctly states, the legal validity of the stop depends on whether the officer’s belief that the defendant violated the Vehicle and Traffic Law is objectively reasonable (majority op at 134). However, what is objectively reasonable depends on what the officer knew at the time of the stop (see People v William II, 98 NY2d 93, 98 [2002]; People v Banks, 85 NY2d 558, 562 [1995]; People v Cantor, 36 NY2d 106, 112 [1975]).
In order to make a determination as to the lawfulness of a driver’s actions under the Vehicle and Traffic Law, it is axiomatic that an officer must know the mandates and prescriptions set forth in that law (People v Robinson, 97 NY2d at 351, 355 [“the Vehicle and Traffic Law provides an objective grid upon which to measure probable cause” for making a traffic stop]). While an officer must know the rules of the road in order to properly enforce the law, it is also the reality of police work that an officer acts based on facts which cannot be known in advance, and which unfold in the moments leading up to the stop. Thus, while an officer’s appreciation of the facts depends on what develops in the field, an officer’s knowledge of the law’s requirements is set without reference to those facts. Although an officer must determine if the facts as observed constitute a violation of the law, the law remains as written.
Given the legal mandates of the Vehicle and Traffic Law and the dynamics of police work in this area, where an officer acts on a mistaken perception of the circumstances leading to a vehicular stop, courts must determine whether such mistake is excusable, and whether the error may supply the requisite probable cause to justify police action. As a general matter, courts in New York have distinguished between mistakes of fact and law, and applied that distinction to traffic stops (see People v Rose, 67 AD3d 1447, 1449 [4th Dept 2009] [stop of defendant’s vehicle could not be justified by officer’s mistaken *142 belief that defendant violated the Vehicle and Traffic Law by flashing high beams]; Matter of McDonell v New York State Dept. of Motor Vehicles, 77 AD3d 1379, 1380 [4th Dept 2010] [state trooper’s mistaken belief that fishtailing violated Vehicle and Traffic Law § 1162, which prohibits unsafely moving a stopped, standing, or parked vehicle unless doing so can be done with reasonable safety, could not justify stop of defendant’s vehicle]; People v MacKenzie, 61 AD3d 703, 703 [2d Dept 2009], lv denied 13 NY3d 798 [2009] [police officer’s observation that defendant was driving without headlights on, 15 minutes after sunset, could not provide the officer with probable cause to make a traffic stop where statute provided that headlights are not generally required until 30 minutes after sunset]; People v Jean-Pierre, 47 AD3d 445, 445 [1st Dept 2008], lv denied 10 NY3d 865 [2008] [stating in dictum that “ ‘(a) mistake of fact, but not a mistake of law, may be used to justify a search and seizure’ ”]; People v Smith, 1 AD3d 965, 965-966 [4th Dept 2003] [officer’s stop of defendant’s vehicle was unlawful because it was premised on the mistaken belief that the vehicle required a front license plate]; Matter of Byer v Jackson, 241 AD2d 943, 944-945 [4th Dept 1997] [officer’s stop of defendant was illegal because it was predicated on the erroneous belief that defendant’s failure to use a turn signal when turning out of a parking lot violated the Vehicle and Traffic Law]; see also People v Allen, 90 AD3d 1082, 1084 [3d Dept 2011] [stating in dicta that “reasonable suspicion cannot be based on a mistake of law”]; People v Baez, 131 Misc 2d 689 [Crim Ct, Bronx County 1986] [stop invalid where police officer mistakenly believed that it was illegal for defendant to have affixed defendant’s license plate by wiring and not bolts]).
In these cases the courts have concluded that the officer’s reasonable mistake of fact, measured by the circumstances faced by the officer at the time of the stop, may support a finding of probable cause, meaning that a stop will be treated as lawful, so long as the officer objectively, reasonably believes that the facts justify the stop, even though the actual facts fail to establish the driver’s violation of the Vehicle and Traffic Law. The courts have not been so forgiving of a mistake of law, and have concluded that such mistake can never justify a stop. (See Allen, 90 AD3d at 1084; Rose, 67 AD3d at 1449; McDonell, 77 AD3d at 1380; MacKenzie, 61 AD3d at 703; Jean-Pierre, 47 AD3d at 445; Smith, 1 AD3d at 965-966; Byer, 241 AD2d at 944-945; Baez, 131 Misc 2d at 693-694.)
*143 The distinction is wholly logical and serves the state’s interests in protecting individual rights and ensuring uniform application of the law. Society relies on police officers to enforce laws based on what the laws say, not on an officer’s mistaken belief. Excusing an officer’s mistake of law removes an incentive to learning the law. While the realities of police work rightly justify tolerance of an officer’s mistake of fact, there is no similar basis to accept or excuse an officer’s error regarding what the law permits and forbids.
IL
This Court is now presented directly with the question whether, as a state constitutional matter, an officer’s mistake of law may provide a basis for probable cause to justify a vehicular stop. The majority concludes that our State Constitution provides no greater protection in this area than the Federal Constitution, as articulated in Heien v North Carolina (574 US —, —, 135 S Ct 530, 534 [2014]), which held that a mistake of law may provide reasonable suspicion to justify a seizure under the Fourth Amendment. However, Heien is not dispositive of our state constitutional analysis.
In the area of search and seizure law, this Court has not hesitated in diverging from the federal approach where a narrow construction of constitutional guarantees would ill-serve our state interests {see Stewart F. Hancock, Jr., New York State Constitutional Law — Today Unquestionably Accepted and Applied as a Vital and Essential Part of New York Jurisprudence, 'll Alb L Rev 1331, 1346 [2014] [according to former New York Court of Appeals Judge Hancock, Jr., “state constitutionalism . . . (is) routinely applied ... to resolv(e) issues of fundamental rights in New York. State constitutional law — and especially its reestablished legitimacy and unhesitating use by judges at all levels of (the) New York judiciary — have helped make the New York judicial system the leading and, in my opinion, the best in the nation”]). For example, we have interpreted our State Constitution more expansively than the Federal Constitution in a way that “best promotes ‘predictability and precision in judicial review of search and seizure cases and the protection of the individual rights of our citizens’ ” (People v P.J. Video, 68 NY2d 296, 304 [1986]; see also People v Scott, 79 NY2d 474, 478 [1992] [declining to adopt Supreme Court’s holding that areas outside a home’s curtilage enjoy no Fourth Amendment protection]; People v Harris, 77 *144 NY2d 434, 438-439 [1991] [State Constitution requires suppression of statements obtained after Payton violation in absence of attenuation, even where statements would not have been suppressed under Federal Constitution]; People v Bigelow, 66 NY2d 417, 426-427 [1985] [rejecting good faith exception to the exclusionary rule]; Hancock, Jr., 77 Alb L Rev at 1332 [“when a New York court concludes that an individual has rights that are not protected under the (F)ederal Constitution, but should be under the New York Constitution, the court will afford that person the greater protection as a matter of state constitutional law. It is simply a matter of fairness and common sense”]; NY Const, art I, § 12). The Court has also sought to adopt “ ‘bright line’ rules [in this area] to guide the decisions of law enforcement and judicial personnel who must understand and implement our decisions in their day-to-day operations” (P.J. Video, 68 NY2d at 305). Even where the United States Supreme Court has not spoken, this Court has read our State Constitution to prevent “enormous unsupervised intrusion by the police . . . upon personal privacy,” notwithstanding a possible future federal determination to the contrary (People v Weaver, 12 NY3d 433, 445 [2009]).
In light of our prior broad interpretation of our State Constitution, and the uniformity of New York case law that has rejected consideration of a mistake of law as part of the probable cause analysis, and because a “violation of a statute . . . triggers the officer’s authority to make the stop and limits the officer’s discretion” (Robinson, 97 NY2d at 355), I would find that a stop based on a police officer’s mistake of law violates our State’s Constitution under article I, § 12. The rule has the benefit of promoting precision and predictability in judicial review because there would be no need to determine the objective reasonableness of the officer’s mistake of the law. All that would need to be considered is what the law says, thus providing a bright-line rule easily followed by the courts and law enforcement, and ensuring the protection of individual rights.
Such a defined rule would incentivize police to know the law; for why would an officer risk a mistake that would result in a judicial determination that the stop was unlawful at its inception?[1] Moreover, if civilians are required to know the law, I see no reason for expecting less from those charged with enforcing *145 it. There is a “fundamental unfairness of holding citizens to ‘the traditional rule that ignorance of the law is no excuse,’ while allowing those ‘entrusted to enforce’ the law to be ignorant of it” (United States v Chanthasouxat, 342 F3d 1271, 1280 [11th Cir 2003] [citation omitted], citing Bryan v United States, 524 US 184, 196 [1998]). Certainly the police have labored under this approach without significant damage to public security and safety (see Heien, 574 US at —, 135 S Ct at 544 [Sotomayor, J., dissenting] [noting there was “no indication that excluding an officer’s mistake of law from the reasonableness inquiry has created a problem for law enforcement in the overwhelming number of Circuits which have adopted that approach”]). Since police are entrusted with authority to safeguard all members of our society, we should not adopt a rule that rewards an error concerning the legitimacy of the officer’s exercise of such power.
I also find no basis for the majority’s conclusion that the rule against mistakes of law fails to promote precision and predictability simply on the majority’s assumption that “it [is] not always . . . easy to classify a particular mistake as one of law or fact” (majority op at 139, citing People v Abdul-Akim, 27 Misc 3d 1220[A], 2010 NY Slip Op 50814[U], *9 [Sup Ct, Kings County 2010]). Nothing suggests that courts have had difficulty, as a general matter, in categorizing an officer’s mistake as one that turns on a misunderstanding of the law, or on incorrect facts. Courts are regularly called upon to determine legal matters and there is no reason to think that courts will be any less able to do so in an area that had been well-settled until today.
While the majority asserts, by way of example, that the mistake at issue in this appeal could be of fact or law (majority op at 139 n 5), this case actually illustrates why there is no problem, of a constitutional dimension, in distinguishing between the two. First, both lower courts easily concluded that defendant’s case involves a question of law, undermining any suggestion that this was a particularly challenging decision. Second, if there is any lack of clarity here it is not due to the *146 inherent difficulty of distinguishing a mistake of law from fact, but to the parties’ stipulation, which in this case failed to address what the officer believed. In other words, if we do not know whether he knew the legal requirements of the Vehicle and Traffic Law that is only because we lack information readily available from the officer, not because there is a problem with the rule.
If the decision today were limited to the validity of the stop alone, it might not be so troubling, but that is not the case. The majority concludes that the evidence obtained as a direct consequence of the stop is admissible against the defendant (majority op at 140). In so doing the majority has limited the reach of this Court’s prior holding in People v Bigelow, which rejected, on state constitutional grounds, a good faith exception to the exclusionary rule which the United States Supreme Court had previously adopted (Bigelow, 66 NY2d at 426-427, citing United States v Leon, 468 US 897 [1984]). The Bigelow Court reasoned that “if the People are permitted to use the seized evidence, the exclusionary rule’s purpose is completely frustrated, a premium is placed on the illegal police action and a positive incentive is provided to others to engage in similar lawless acts in the future” (id. at 427). This analysis applies with equal force to an officer’s mistake of law, and provides an additional reason to reject such mistake as a viable consideration in determining the existence of probable cause in support of the admission of unlawfully obtained evidence (see United States v Lopez-Soto, 205 F3d 1101, 1106 [2000] [excusing an officer’s reasonable mistake of the law would “defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey”]).[2]
*147 III.
The majority relies on People v Estrella (10 NY3d 945 [2008], cert denied 555 US 1032 [2008]) for its argument that we have previously rejected the distinction between mistakes of law and fact, seemingly suggesting it does not break new ground in defendant’s case. In my opinion, the majority attaches an overly generous significance to Estrella, and ignores the main distinction between that case and this appeal.
In Estrella, police stopped a vehicle with Georgia license plates believing that its windows were excessively tinted in violation of Vehicle and Traffic Law § 375 (12-a) (b) (4) (People v Estrella, 48 AD3d 1283, 1284-1285 [4th Dept 2008]). As it turned out the police were incorrect because the tinting was subject to Vehicle and Traffic Law § 250 (1). That section excludes from New York’s registration and equipment requirements certain nonresident owners of out-of-state vehicles that are in compliance with corresponding requirements of the state in which the owner resides (id. at 1285). The Appellate Division concluded that the officer had probable cause to stop the driver, and County Court properly denied the defendant’s request to suppress the evidence seized from the vehicle as a result of the stop (id. at 1284-1285).
This Court affirmed in a cursory, five sentence memorandum opinion. The majority here contends that the Court in Estrella based its decision on the officer’s reasonable belief, without distinguishing between mistakes of law and fact (majority op at 135-136). The majority reaches this conclusion based on the Estrella Court’s statement that “[t]he officer was not chargeable with knowledge that the tinting was legal in Georgia, where the car was registered” (Estrella, 10 NY3d at 946). Such a sweeping interpretation of Estrella, however, cannot be read into this one sentence.
Certainly, no Appellate Division interpreted this Court’s memorandum decision in Estrella to have eliminated the well-established distinction between mistakes of law and fact. PostEstrella, all the Appellate Division Departments, including the Fourth Department, continued to apply this distinction (see e.g. Rose, 67 AD3d at 1449; McDonell, 77 AD3d at 1380; MacKenzie, 61 AD3d at 703).
Moreover, because at the time this Court affirmed the Fourth Department in Estrella, the lower courts consistently applied the mistake of law/mistake of fact distinction, if this Court had *148 intended to upset the approach in this state, it most certainly would have done so in an opinion that fully articulated the grounding for its decision (see People v Jones, 24 NY3d 623 [2014] [noting that the Court was departing with its previous case law and explaining the grounds for that departure]; People v Damiano, 87 NY2d 477, 489 [1996] [long-settled rules open to reexamination where “some evidence that the policy concerns underlying them are outdated or if they have proved unworkable”]; People v Bing, 76 NY2d 331, 338 [1990] [recognizing Court’s obligation to justify a significant departure from its prior case law]). Instead, the Court issued an opinion devoid of citations to any law, in support of what most certainly would have been considered a deviation from New York’s longstanding approach.
In my opinion, Estrella is more properly understood to limit the laws for which an officer is responsible — “chargeable with knowledge” in the words of the Estrella Court — to those of the State of New York. That is a suitable place to draw the line regarding the legal knowledge expected of an officer.[3] Otherwise, it would place undue demands on a police officer to have to be familiar with the laws of every other jurisdiction, when those laws relate to the minutia of technical requirements imposed on an automobile. Automobile window tinting in Estrella is but one example.
The same cannot be said for a New York officer’s understanding of New York law. We expect an officer to know the law of this state with precision because that law is the source of the officer’s authority. We should not excuse an error about the basic foundation of an officer’s power, or discourage better comprehension of it. Moreover, if, as the majority concludes, we cannot depend on an officer charged with enforcement powers to know the law, we place in question the integrity of our criminal justice system. That strikes me as an unacceptable outcome of the majority’s approach.
IV
Here, defendant did not violate the Vehicle and Traffic Law. Therefore, I dissent because under the State Constitution, the *149 officer had no probable cause to stop her vehicle, and the courts below properly suppressed evidence obtained pursuant to the stop.
Chief Judge Lippman and Judges Read, Pigott, AbdusSalaam and Fahey concur; Judge Rivera dissents in an opinion.
Order reversed, defendant’s motion to suppress denied and case remitted to Village Court, Village of Newark, for further proceedings in accordance with the opinion herein.

. The majority posits that excluding mistakes of law from the probable cause analysis “[will] do little to protect the rights of the accused or encour *145 age officers to better learn the law” (majority op at 139). This argument relies on the majority’s underlying flawed premise that objectively reasonable mistakes of law involve only complex matters which officers simply should not be expected to learn. Of course those are exactly the types of mistakes that we should incentivize officers to avoid by excluding evidence obtained as a result of such errors. Moreover, if a law is simply too difficult for an officer to understand or learn, why should we expect those without legal training to fare any better?

. The majority contends that the admission of evidence resulting from a mistake of law does not limit Bigelow because if the mistake fails the objectively reasonable test, the evidence will be suppressed (majority op at 134 n 2). However, that reading of Bigelow ignores the overarching concern that underlies the decision, namely that we should adopt rules that deter police misconduct. Moreover, the majority ignores the intersection of good faith and objectively reasonable mistakes of law. Under Bigelow, evidence obtained by an officer who acts mistakenly, but in good faith, is inadmissible, regardless of the objectively reasonable character of the officer’s mistake. In contrast, under the majority’s approach, evidence is admissible if the officer acts in good faith and the mistake is deemed objectively reasonable.

. The majority incorrectly characterizes my argument about Estrella as concerning “which mistakes of law” are objectively reasonable (majority op at 138 n 4). Unlike the majority, I believe Estrella focused on the more general and rational point that New York officers should be expected to know New York law. Whether a mistake concerning a foreign jurisdiction’s law is objectively reasonable is beside the point.